[No. 17235. Department One. November 2, 1922.]

CROWN PAVING & CONSTRUCTION COMPANY, LIMITED, *Appellant*, v. WALLA WALLA COUNTY, *Respondent*.[1]

CORPORATIONS (155, 158) — REPRESENTATION BY OFFICERS — CONTRACTS—ACTUAL OR APPARENT AUTHORITY—EVIDENCE—SUFFICIENCY. The president of a paving corporation has no implied authority to bind the company, and it is not notice of his authority, but rather notice of lack of authority, to submit bids on contracts amounting to $272,000, that he was given drafts in the sum of $13,700, where the drafts did not contain the name of the company and were less than the 10% deposit required on submitting bids for the work.

SAME (155, 158). A county is without authority to forfeit checks of a paving company, in the sum of $13,000, deposited by the president of the company on bids submitted by him, on work amounting to $272,000, where it appears that the president had no authority to submit the bids, the checks did not equal ten per cent of the contracts as required, and the county promptly let the contracts to other bidders.

[1]Reported in 210 Pac. 357.

SAME (165)—CONTRACTS—RATIFICATION.  In such a case, it is not a ratification of the acts of the president, and it is immaterial that the company, on receiving notice of the bids, advised the county that, notwithstanding the president's want of authority, it would be willing to enter upon one of the contracts, if the county desired it to do so.

Appeal from a judgment of the superior court for Walla Walla county, Mills, J., entered September 26, 1921, upon findings in favor of the defendant, in an action to recover a deposit on a bid for county work, tried to the court.  Reversed.

*Evans & Watson,* for appellant.

*Earl W. Benson* and *A. J. Gillis,* for respondent.

MITCHELL, J.—Since 1911, the plaintiff has been a corporation organized under the laws of the Province of Alberta, Dominion of Canada, with its office and principal place of business at Calgary.  By the laws of the province and the articles and by-laws of the corporation, its business is required to be managed by a board of directors, the three officers of which, at the dates of the transactions here involved, were a president, a vice-president, and a secretary-treasurer and manager.  The board of directors elected R. C. Marshall as managing director and made him alone the general and controlling agent of the corporation in its financial and business dealings.  The powers or duties of its president were limited to presiding at the meetings of the directors and shareholders.  In 1920, it commenced to do business in this country.  First, it forwarded from its home office a bid for a contract for road work in this state.  Thereafter it sent its president into this state and Montana to assist in procuring information necessary in making bids for contracts for the construction of highways, with specific and limited instruction to make no bid except upon positive direc-

tions by the manager of the corporation.  At one place in Montana, and at Prosser and Walla Walla in this state, the public authorities, at about the same time, were calling for bids for street or highway improvements, of which the plaintiff was advised by its president, who visited the different localities.

To facilitate its business the plaintiff furnished its president with two drafts, one for $10,000 and the other for $3,700, drawn by its bank in Calgary on New York, with instructions not to use either until directed to do so.  The county of Walla Walla advertised for sealed bids to be opened at two p. m., April 30, 1920, for the paving of two pieces of road, requiring each bid to be accompanied ''by a certified check in ten per cent of the amount of the bid, conditioned that the check be forfeited to Walla Walla county if the party making such bid fail or neglect to enter into a written contract and give bond within ten days after date of award for the faithful performance of the contract.''  This is admitted by the answer, by failure to deny it.  The president of the corporation was positively instructed by the manager, by two telegrams, not to bid for either of the jobs.  Nevertheless, he did make written bids in the name of the corporation, one for $199,672.10, to which he attached the $10,000 draft, and the other for $72,399.29, to which he attached the $3,700 draft.  Both drafts were drawn payable to the treasurer of Walla Walla county and were in no way endorsed by the president of the corporation in his own name or otherwise.  Both bids were accepted, but prior thereto the county commissioners were notified by plaintiff's president that he had no power to enter into the contract, which would have to be forwarded to Calgary for that purpose.  Contracts were prepared and forwarded to the home office of the plaintiff, and on May 8, by

telegram and letter, it advised the county commission-
ers, in effect, that notwithstanding the president had
been instructed not to make the bids (by three tele-
grams, the last of which, however, did not reach him
until after the bids were in), the corporation had, upon
getting the proposed contracts, taken the matter up
with its bank and bonding company, but found that, on
account of other obligations and circumstances, suffi-
cient bond could not be arranged for both contracts,
but that it was willing to carry out the smaller of the
two projects if the county so desired.

On May 11, ten days after the awards were made,
the county commissioners canceled the awards and at
once accepted bids and entered into contracts for both
projects with another bidder whose certified checks
had been held from the date of the opening of the bids.
Thereupon the plaintiff demanded a return of the
$13,700, which was refused, and the county commis-
sioners, upon notice and over the protest of the plain-
tiff, declared the whole amount forfeited. This suit
followed to recover the money forfeited, together with
interest from the commencement of the suit, with the
result of a judgment in favor of the county, from which
the plaintiff has appealed.

On the testimony of both the manager and president
of the appellant, and also upon that of all three of the
county commissioners on the subject of the good faith
of the appellant, the trial court was of the opinion
that "there is nowhere any suggestion or claim of bad
faith on the part of any person involved in this transac-
tion."

It has already been noticed that plaintiff's president
violated positive instructions in submitting the bids.
There is no evidence tending to show that he had any
express authority to make the bids, or that he had

been clothed with apparent authority, or that he had ever before executed any such bids, or that he had ever been held out by the appellant as having such authority, or that his acts of bidding had been ratified. In the case of *Lewiston Water & P. Co. v. Brown*, 42 Wash. 555, 85 Pac. 47, we quoted with approval the rule as stated in 10 Cyc. 903, as follows:

" 'The president of a private corporation is, as the term implies, the presiding officer of its board of directors and of its shareholders when convened in general meeting. The office itself, however, confers no power to bind the corporation or control its property. The president's power as an agent must be sought in the organic law of the corporation, in a delegation of authority from it, directly or through its board of directors, formally expressed or implied from a habit or custom of doing business.''

See, also, *Oldfield v. Angeles Brewing & Malting Co.*, 77 Wash. 158, 137 Pac. 469; 2 Thompson on Corporations (2d ed.), § 1450 *et seq.*

The argument on behalf of the respondent that the drafts furnished by the appellant from its home office to the president of the corporation and by him attached to the bids were tokens of implied or apparent authority of the president to bind the appellant is convincingly overcome by the fact that the drafts in no way bore the name of appellant, and, also, because the $13,700 is noticeably deficient to justify or support bids amounting to $272,071.39 on calls requiring a deposit of ten per cent of the amount of the bids. Rather than constituting apparent authority it was, under the circumstances, notice to the county commissioners of lack of authority to make the bids in question.

In the case of *Donaldson v. Abraham*, 68 Wash. 208, 122 Pac. 1003, wherein a bidder for county work was relieved from the forfeiture of a certified check sub-

mitted with his bid because by mistake and inadvertence the bid was in a sum much less than was intended, it was held that, where the mistake relied on was of the kind and made under circumstances ordinarily giving a court of equity jurisdiction for the purpose of granting relief, "equity has the same power to relieve from forfeitures provided for by statute as it has to relieve from forfeitures provided for by ordinary contract." But the present case is stronger than that for the appellant, because it appears in this case that the mind of appellant, who seeks to be relieved from a forfeiture of its funds, never met the mind of the other party which declared the forfeiture and appropriated the funds, for the reason, as already noticed, the person who deposited the money was without authority to do so.

It is insisted, however, that if the president of the corporation was unauthorized to make the bids and deposits, nevertheless the appellant is bound because of its subsequent ratification of those acts. But we do not understand there was any ratification. The conduct of the appellant relied on in this respect was that, upon learning of the unauthorized act of its president, it determined upon a line of business dealing consistent with the knowledge of the right and power to ratify and, accordingly, promptly attempted to make arrangements with its bonding company and bank so it could accept the situation, but upon learning it could not effect such arrangement, it just as promptly notified the commissioners to that effect, saying, however, it would take the smaller contract if desired by the board. This the board refused to do. By its conduct the appellant profited in no manner whatever, nor did it disadvantage the respondent, which was in just the same situation as if the so-called bids of appellant had

never been filed. At once the respondent accepted the lowest bids that had actually been made, by parties whose forfeit money had never been released, and without any expense by way of readvertising for bids or otherwise, entered into contracts under which the improvements were made.

Upon consideration of the whole record in the case, we are satisfied that the judgment should be, and it is, reversed with directions to grant the relief prayed for.

PARKER, C. J., FULLERTON, TOLMAN, and BRIDGES, JJ., concur.