[No. 38194.    Department One.    May 4, 1967.]

THE WHITE PASS Co., *Appellant,* v. W. SCOTT ST. JOHN, *Defendant,* JAKE LEINGANG, *Respondent.*\*

*\*Reported in 427 P.2d 398.*

*Gavin, Robinson, Kendrick, Redman & Mays, John Gavin,* and *Kenneth C. Hawkins,* for appellant.

*Bruce P. Hanson* (of *Tonkoff, Holst & Hanson*), for respondent.

ROSELLINI, J.—This is an action for the recovery of damages for the destruction of appellant's ski lodge and equipment. The appellant had contracted with the respondent to enlarge the ski lodge. The subcontractor engaged by the respondent was negligent in applying a volatile floor material, and it was this negligence which caused the fire. The appellant recovered judgment against the subcontractor in the amount of $139,431.20.

The appellant obtained satisfaction of the judgment to the extent of $81,843, which was its proportionate share of the insurance carried by the subcontractor. In order to obtain this payment from the insurer, the appellant signed an agreement not to levy on the property of the subcontractor for the balance of the judgment.

In addition to finding the subcontractor liable for its negligence in applying the flooring material, the trial court found that the material was not inherently dangerous, but dangerous only if it was used with lack of care. It further found that the appellant owner was not guilty of contributory negligence. The trial court dismissed the appellant's action against the respondent, the general contractor, on findings (1) that the subcontractor was an independent contractor, (2) that the appellant knew that the subcontractor was performing the work and made no objection, and (3) that the appellant had not sought to hold the respondent liable until 2 years after it had sued the subcontractor.

At the outset, respondent moves to dismiss the appeal on the grounds that appellant has released a joint tort-feasor and has thus released the respondent.

■ The respondent cites *J. E. Pinkham Lumber Co. v. Woodland State Bank,* 156 Wash. 117, 286 Pac. 95 (1930), wherein this court said that it was committed to the rule that the release of one joint tort-feasor is a release of all, regardless of whether the release be partial or in full, whether the amount of the recovery be unliquidated or measured, and whether the release of the one be with the express reservation that it shall not apply to the other.

The rule of that case has been limited to situations in which the defendant is in fact a joint tort-feasor with a party who has been released. *DeNike v. Mowery,* 69 Wn.2d 357, 418 P.2d 1010 (1966). To be a joint tort-feasor, the respondent must have acted in concert with its subcontractor in producing the damage. It is not suggested that the respondent was an active participant in the tort. His liability, if any, must flow from his contract relations with ap-

pellant, not from active negligence. Consequently, the rule of *J. E. Pinkham Lumber Co. v. Woodland State Bank, supra,* is not applicable here.

In *Johnson v. Stewart,* 1 Wn.2d 439, 96 P.2d 473 (1939), also cited by the respondent, it was held that where an action is based on contract, the rule regarding the release of one joint tort-feasor does not apply. That case was concerned with the question whether the release of one joint judgment debtor releases another automatically. This court said, at 445:

> In considering such questions as that here presented, the strong trend of modern authority is to carry out the intention of the parties, if such intent can be determined from their acts, agreements, or documents signed, and to follow the rule that, where it clearly appears that the releasor intended to release a particular joint obligor only and to retain his rights against others, that intent will be given effect.

The release involved in this action or "covenant not to levy execution" as the appellant prefers to describe it, expressly reserves the appellant's right to appeal the adverse decision on his suit against the respondent. This court, in *Johnson v. Stewart, supra,* also recognizes the rule found in 2 Freeman, Judgments § 2377 (5th ed. 1925), that

> "Judgments do not differ materially from other joint obligations so far as concerns the effect of a release of one joint debtor on the right to pursue the others. The fact that an obligation has been reduced to judgment does not change its character and incidents in this respect;"

However, we said, "a judgment adjudicating contract rights is a more definite obligation than the contract itself, the rights of the parties having crystallized, through judicial proceedings, into a fixed and final form." The same may be said of a judgment for a tort.

This court, in a later case, *Arndt v. Manville,* 53 Wn.2d 305, 333 P.2d 667 (1958), also recognized that the court will give effect to an express reservation of the right against a co-obligor.

■ The amount of appellant's loss in this case has become liquidated as a result of the judgment against the subcontractor in an action in which the respondent was a defendant. If the judgment had been given against the respondent, it would necessarily have been in the same amount. Consequently, there is no uncertainty as to the amount of damage for which the appellant has not been compensated. It is the difference between $81,843 and the amount of the judgment. The respondent does not suggest that he has lost his right of contribution as against the subcontractor by reason of the release, and consequently, there appears to be no just reason why it should be held that the partial release of the subcontractor operated as anything other than a release pro tanto of the respondent.

We hold that the release of the subcontractor with the reservation of rights against the contractor operated to release the respondent pro tanto but did not preclude the appellant from pursuing this appeal, and if successful, in recovering the remainder of the amount of the judgment from the respondent.

Turning to the merits of the appeal, we find error assigned to the trial court's conclusion that because the subcontractor who laid the flooring was an independent contractor over whom the respondent exercised no supervision and control, the respondent was not responsible for the negligent act of the employees of the subcontractor.

■ As appellant contends, the duty to lay the flooring in a careful and prudent manner so as not to damage the property of the owner was a nondelegable duty of the general contractor. The fact that the respondent, by virtue of its contract with the subcontractor, exercised no supervision and control over the manner in which the work was performed, could not absolve it from its responsibility under its contract with appellant.

In the case of *Van Slyke Warehouse Co. v. Vilter Mfg. Co.*, 158 Wash. 659, 291 Pac. 1103 (1930), cited by the appellant, we held that a contractor could not avoid liability to an owner by engaging a subcontractor to do work

which was intrinsically dangerous and liable to result in injuries to others. It is true that in that case some point was made of the fact that there was inherent danger in the work being done, and that the trial court in this case refused to find that the application of the volatile flooring material was an inherently dangerous operation.

We do not think, however, that this fact should be controlling. The theory of liability is that the contractor has agreed to perform the work specified in the contract. In the absence of a provision that he may subcontract the work and that the owner will look only to the subcontractor for compensation for damage if the work is not properly done, there is an implied undertaking on the part of the contractor to see that the work is performed with due care. As far as his relations with the owner are concerned, the subcontractor employed by him is his agent for whose negligence he is responsible to the owner. *Mills v. Krauss,* 114 So.2d 817 (Fla. 1959); *Pacific Fire Ins. Co. v. Kenny Boiler & Mfg. Co.,* 201 Minn. 500, 277 N.W. 226 (1937); *National Fire Ins. Co. of Hartford v. Westgate Constr. Co.,* 227 F. Supp. 835 (D. Del. 1964); 27 Am. Jur. *Independent Contractors* § 48 (1940); see also 17A C.J.S. *Contracts* § 329 (1963).

In an annotation, "Liability of employer for acts or omissions of independent contractor in respect of positive duties of former arising from or incidental to contractual relationships," 29 A.L.R. 736 (1924), the author says:

> The doctrine with reference to which the liability of an employer has frequently been affirmed may be thus stated in its most general form: A person who by a specific agreement undertakes to do some particular thing, or to do it in a certain manner, cannot, by employing an independent contractor, avoid responsibility for an injury resulting from the nonperformance of any duty or duties which, under the express terms of the agreement, or by implication of law, are assumed by the undertaker.

The author also observes that there are no authorities to support a statement in *John H. Radel Co. v. Borches,* 147 Ky. 506, 145 S.W. 155 (1912) to the effect that knowledge or acquiescence on the part of the owner would relieve the

general contractor of liability. The writer of the opinion in that case must have had in mind a novation, whereby the owner would enter into a new contract with the independent contractor, terminating his contract with the general contractor insofar as the work to be done by the independent contractor was concerned. As the author of the annotation observed, mere knowledge on the part of the owner that the work is being done by a subcontractor should not be and is generally not held to be sufficient to relieve the general contractor of his contractual obligation.

In accord with this view is 3 Williston, Contracts § 411 (3d. ed. 1960) pp. 18, 19, 20:

The duties under a contract are not assignable *inter vivos* in a true sense under any circumstances; that is, one who owes money or is bound to any performance whatever, cannot by any act of his own, or by any act in agreement with any other person, except his creditor, divest himself of the duty and substitute the duty of another. "No one can assign his liabilities under a contract without the consent of the party to whom he is liable."

This is sufficiently obvious when attention is called to it, for otherwise obligors would find an easy practical way of escaping their obligations: [This is followed by a quote which is a restatement of the rule as phrased by Professor Williston.]

. . . .

One who is subject to a duty though he cannot escape his obligation may delegate performance of it provided the duty does not require personal performance. In the absence of express agreement to the contrary there will be no such requirement if the duty is of such character that performance by an agent will be substantially the same thing as performance by the obligor himself.

The performance in such a case is indeed in legal contemplation rendered by the original obligor, who is still the party liable if the performance is in any respect incorrect.

In § 420 of the same chapter, the author remarks that a novation may be effected if the contractor manifests to the owner at the time of the assignment of his right and duties

under the contract to the third person that he intends no longer to be bound under his contract and to substitute the third party as an obligor and if thereafter the owner accepts performance by the third party.

The facts of this case do not show that a novation was ever intended and there is no contention that they do. Consequently, we hold that the respondent was liable for the subcontractor's negligence in performing the respondent's duty under its contract with appellant, and that the appellant's knowledge of the fact that the respondent had delegated its duties to a subcontractor did not affect that liability.

■ The appellant assigns error to the trial court's conclusion that the failure to bring action until 2 years after the suit was instituted against the contractor constituted a waiver. This assignment likewise has merit. There was no finding and there is no suggestion that the statute of limitation barred the action. Mere delay, lapse of time, and acquiescence standing alone do not bar a claim short of the statute of limitation. *Rutter v. Rutter*, 59 Wn.2d 781, 370 P.2d 862 (1962) and cases cited therein.

The respondent seeks to support the finding of waiver by the following facts: (1) On the day following the fire, the president of the appellant corporation said to Mr. Leingang, "We do not hold you responsible," or words to that effect. (2) After the fire, the flooring portion of the contract was deleted from the contract and settlement for it was made by the appellant directly with the subcontractor. (3) The appellant paid the respondent for his work (expressly reserving any claims, however) and entered into a new contract with him to build the lodge. (4) The first theory of the appellant under which it asserted a claim against the respondent was that the respondent's duty arose under "general conditions of the contract" and those conditions were found by the trial court to be inapplicable.

■ Waiver is an intentional relinquishment of a known right. It will not be implied on doubtful factors. The mere withholding of the enforcement of a right to payment is not

a waiver; and the doctrine of implied waiver by silence or acquiescence will only be invoked where otherwise a forfeiture would result. *Voelker v. Joseph,* 62 Wn.2d 429, 383 P.2d 301 (1963). There is no question of forfeiture here. There is also no question of estoppel.

The only evidence which might show a waiver is the claimed statement of the appellant's president on the day following the fire. That statement betrays no awareness of the appellant's rights. There is no showing that the president had authority, actual or implied, to waive a right of the corporation. See *Lewiston Water & Power Co. v. Brown,* 42 Wash. 555, 85 Pac. 47 (1906); *Crown Paving & Constr. Co. v. Walla Walla Cy.,* 122 Wash. 144, 210 Pac. 357 (1922). The statement was readily understandable as acknowledgment by the president that he knew Leingang's men did not start the fire. It did not amount to an express waiver. None of the acts listed by the respondent is inconsistent with an intention on the part of the appellant not to relinquish its rights against the respondent. They do not support a finding of waiver.

The judgment is reversed and the cause remanded with direction to enter judgment for the appellant.

FINLEY, C. J., WEAVER and HALE, JJ., and DENNEY, J. Pro Tem., concur.