John and Judith BROOKS and State Farm Fire
and Casualty Company, a foreign corporation,
Plaintiffs-Appellants-Petitioners,

v.

Wayne HAYES, d/b/a Wayne Hayes Real Estate
and Claude W. Marr, Defendants-Respondents.

Supreme Court

*No. 83-1521. Argued September 4, 1986.—Decided October 29,
1986.*

(Also reported in 395 N.W.2d 167.)

229

For the plaintiffs-appellants-petitioners there were briefs by *Stuart B. Eiche* and *Schulz & Schapekahm, S.C.*, Milwaukee, and oral argument by *Mr. Eiche.*

For the defendants-respondents there was a brief by *John W. Roethe* and *Roethe, Buhrow, Roethe, Pope & Fish*, Edgerton, and oral argument by *John W. Roethe.*

SHIRLEY S. ABRAHAMSON, J. This is a review of an unpublished decision of the court of appeals filed September 19, 1985, affirming a judgment in the circuit court of Jefferson county, John B. Danforth, circuit court judge, dismissing the complaint.

The issue presented on review is whether a general contractor who hires an independent contractor to perform services under the general contractor's agreement with a landowner to "provide all necessary labor and materials and perform all work of every nature whatsoever to be done in the erection of a residence" is liable to the landowners for damage to their property caused by the independent contractor's negligent construction.[1] We hold that a general contractor who has a contractual duty of due care in performing the construction contract may be liable to the owner for damages when an independent contractor hired by the general contractor negligently performs under the construction contract and causes property damage to the owner. We reverse the decision of the court of appeals and the judgment of the circuit court, and we remand the cause for a new trial.

## I.

The issue arose in the following circumstances. In May of 1978, John and Judith Brooks, hereafter plaintiff-owners, contracted with Wayne Hayes, doing business as Wayne Hayes Real Estate, to construct a Windsor Home, a "package, predesigned, precut" home, on a lot they owned.[2] While Hayes was primarily a real estate broker, he also sold Windsor Homes.

---

[1] This issue is a question of law. This court need not defer to the decision of the circuit court or court of appeals when deciding a question of law.

[2] Lavern Maasz, a real estate broker working in Hayes' office, signed the contract for "Wayne Hayes Real Estate." Hayes does not challenge Maasz's authority to execute the contract on behalf of himself or Wayne Hayes Real Estate.

The construction contract required Hayes to "provide all necessary labor and materials and perform all work of every nature whatsoever to be done in the erection of a residence for" the plaintiff-owners. The circuit court found that the plaintiff-owners and Hayes contemplated that subcontractors hired by Hayes would perform much of the home construction work and Hayes would not control the method of construction. The circuit court further found that Hayes had no personal experience in construction.

Lavern Maasz of Hayes Realty acted as "expeditor" at the work site. Maasz visited the work site approximately once a day to ensure that the construction progressed and all necessary materials were on hand. The circuit court found that neither Hayes nor his associates exercised any control over the details of the work.

During construction, the plaintiff-owners requested that a "heatilator" be installed as "an extra" to increase the efficiency of the fireplace. Claude Marr, who had been hired by Hayes to do the masonry work, including the fireplace, installed the heatilator.

The plaintiff-owners moved into the house in the winter of 1978. When the plaintiff-owners used the fireplace they smelled smoke in areas of the house remote from the fireplace. In response to their complaints, Maasz of Hayes Realty inspected the fireplace system, once with Marr and once with a different mason. The plaintiff-owners also hired a mason to inspect the fireplace system. None of these three masons could detect the cause of the problem.

The plaintiff-owners withheld final payment under the construction contract pending resolution of their claim that the fireplace and other masonry work were defective. Unable to discover the cause of the smoke

odor, Maasz, acting on behalf of Hayes, and the plaintiff-owners agreed to resolve the claims relating to the masonry work by reducing the purchase price of the home by $700.00.

The plaintiff-owners used the fireplace with some frequency until November 1, 1980, when a fire in the home caused structural damage around the fireplace and smoke damage both to the house and to personal belongings, including clothes and furniture. The circuit court found, and the parties do not dispute this finding, that the mason's negligence in installing the heatilator caused the fire.

The plaintiff-owners sued both Marr and Hayes. The circuit court dismissed Marr from the suit because he had been adjudicated a bankrupt. The circuit court dismissed the complaint against Hayes as well, concluding that Hayes was neither personally negligent in the construction nor vicariously liable for the negligence of the independent contractor.

The court of appeals affirmed the dismissal of the complaint against Hayes, relying on the independent contractor rule. This rule limits the doctrine of respondeat superior. The generally accepted independent contractor rule is that "one who contracts with an independent contractor is not liable to others for the torts of the independent contractor." *Snider v. Northern States Power Co.*, 81 Wis. 2d 224, 232, 260 N.W.2d 260 (1977).

Further, the court of appeals concluded that this case did not fall within any of the many exceptions to the independent contractor rule. One exception is that an employer of an independent contractor is vicariously liable for the tortious conduct of the independent contractor if the duty cannot be delegated to the independent contractor. Another exception is that an employer

of an independent contractor is vicariously liable for the torts of an independent contractor if the activity of the independent contractor is inherently dangerous. The court of appeals viewed Hayes' duty as delegable; it further concluded that the activity delegated was not inherently dangerous. Accordingly, the court of appeals held in favor of Hayes on the basis of the independent contractor rule.

## II.

The plaintiff-owners' principal argument on review is that the independent contractor rule does not apply to the case at bar. According to the plaintiff-owners, the fact that there is a contractual relation between the plaintiff-owners and Hayes and that the damage was to property of the plaintiff-owners, not a third party, distinguishes this case from the typical tort case in which the independent contractor rule protects the general contractor from vicarious liability to a third party for the independent contractor's tortious conduct.

The plaintiff-owners contend that although the construction contract was silent with regard to the level of performance or standard of care required of Hayes or the subcontractors, the contract implicitly imposes on Hayes the duty to perform with due care.[3] We agree

---

[3] The legislature has apparently also expressed the policy that a construction contract includes an implied agreement to perform the contract in a workmanlike manner.

Sec. 706.10 (7), Stats. 1983-84, provides:

"In the absence of an express or necessarily implied provision to the contrary, a conveyance evidencing a transaction under which the grantor undertakes to improve the premises so as to equip them for

with the plaintiff-owners' interpretation of the contract and, for purposes of this review, Hayes has not disputed this interpretation of the construction contract. The plaintiff-owners' interpretation is supported by *Colton v. Foulkes*, 259 Wis. 142, 146, 47 N.W.2d 901 (1951), in which the court adopted the rule that "accompanying every contract is a common-law duty to perform with care, skill, reasonable expediency and faithfulness the thing they agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of contract." See also *Milwaukee Cold Storage Co. v. York Corp.*, 3 Wis. 2d 13, 25, 87 N.W. 2d 505 (1958); *Fisher v. Simon*, 15 Wis. 2d 207, 211–212, 112 N.W.2d 705 (1961); *Peterson v. Sinclair Refining Co.*, 20 Wis. 2d 576, 583, 123 N.W.2d 479 (1963).

Although Hayes assumed a contractual duty to the plaintiff-owners to perform the construction contract with skill and due care, Hayes delegated the performance of the contract to others. The question then is whether the delegation of performance of the masonry work relieved Hayes of liability for breach of contract when the mason, an independent contractor, negligently performed that part of Hayes' contractual obligation.

The plaintiff-owners assert that Hayes may not avoid responsibility to them for his failure to perform his contractual duty of due care merely by hiring an

---

grantee's specified use and occupancy, or to procure such improvement under grantor's direction or control, shall imply a covenant that such improvement shall be performed in a workmanlike manner, and shall be reasonably adequate to equip the premises for such use and occupancy."

This section does not apply because the plaintiff-owners, not Hayes, owned the land.

independent contractor.[4] We agree with this assertion. The hornbook principle of contract law is that the delegation of the performance of a contract does not, unless the obligee agrees otherwise, discharge the liability of the delegating obligor to the obligee for breach of contract.[5]

Our conclusion that a general contractor is liable to the owner for breach of the contractual duty of due care when an independent contractor negligently performs the general contractor's work under the contract garners substantial support from cases in Wisconsin and other jurisdictions.

In *Medley v. Trenton Investment Co.*, 205 Wis. 30, 236 N.W. 713 (1931), a landlord hired an independent contractor to exterminate vermin. Without any warning, the independent contractor filled an apartment with

---

[4] Professor Justin Sweet supports this reading of the law. Professor Sweet concludes that the independent contractor rule "though subject to many exceptions, relieves the employer of an independent contractor from responsibility from the latter's improper performance. However, this defense, where available, does not relieve the employer of an independent contractor when the independent contractor's failure to perform properly has damaged a party to whom the employer of the independent contractor owed a contract right of proper performance." Sweet, *Legal Aspects of Architecture, Engineering, and the Construction Process* (3d ed. 1985), sec. 32.05 (C), p. 739 (citations omitted).

[5] Restatement (Second) of Contracts, sec. 318 (3) (1979); Williston, Contracts, sec. 411, p. 20 (3d ed. 1960); 4 Corbin, Contracts, sec. 866, 868 (1951). *Cf.* Sec. 402.210 (1), Stats. 1983-84 (Uniform Commercial Code, which is not applicable to this contract, sets forth the rule that no delegation of performance relieves the party delegating of any liability for breach), and Sequillante & Fonseca, *Williston on Sales*, sec. 10-7 (1973).

gas, and the gas leaked into another apartment causing a tenant's death. The court upheld a jury verdict against the landlord, holding that the independent contractor rule would not shield the landlord from liability. The relation between the landlord and the tenant distinguished this case from the case in which a third party sues the person who hired an independent contractor. The landlord owed "a special duty" to use reasonable care to protect the tenant from injury, a duty based on the relation between landlord and tenant, and the landlord was liable for breach of this duty. *Id.* at 37.

This court explained the *Medley* holding in a subsequent case as follows: "In this context, the term 'special duty' of reasonable care meant a duty created by the contractual relationship of landlord and tenant. A duty of reasonable care created by contract cannot be allocated to an independent contractor in a relationship with a party to the contract." *Peterson v. Sinclair Refining Co.*, 20 Wis.2d 576, 586, 123 N.W. 2d 479 (1963).

In the *Sinclair Refining* case, Sinclair Oil hired an independent contractor to deliver fuel oil in fulfillment of Sinclair Oil's contract with Peterson. While delivering the oil to Peterson, the independent contractor negligently triggered an explosion which damaged Peterson's property and person. Peterson alleged in his complaint that (1) Sinclair breached its contract to deliver fuel safely and (2) Sinclair was vicariously liable for the independent contractor's tortious conduct because fuel delivery was a nondelegable duty. The court declared that the contract contained an implied in law promise of safe delivery which Sinclair could not avoid by hiring an independent contractor to make delivery. The court then held that if the delivery was a breach of the duty of

safe delivery, Peterson stated a cause of action on a contract theory. The court expressly declined to address whether the complaint stated a valid cause of action in tort.

The *Sinclair Refining* case demonstrates that this court has recognized that an employer of an independent contractor may be liable to the contracting party for breach of a contractual duty of due care when an independent contractor negligently performs under the contract.

Of the case law from other jurisdictions that supports the plaintiff-owners' contractual theory of Hayes' liability, the plaintiff-owners rely predominantly on *White Pass Co. v. St. John*, 71 Wash. 2d 156, 427 P.2d 398 (1967). In *White Pass* the owner of a ski lodge had contracted with a general contractor to enlarge the lodge, and the general contractor employed an independent contractor to work on the lodge. The independent contractor's negligence caused a fire that damaged the lodge and equipment, and the owner of the lodge sued the general contractor for damages. Despite the independent contractor rule, the court held the general contractor liable for the independent contractor's negligence. The court relied on well-recognized principles of contract law: (1) an obligor may delegate performance of a duty so long as the contract does not require personal performance; (2) the performance of the contract by another is, as a matter of law, performance by the original obligor; (3) the original obligor is liable to the obligee if the assignor's performance is defective. The *White Pass* court concluded that the owner's mere knowledge that the work is being done by a subcontractor is not

generally sufficient to relieve the general contractor of his contractual obligation.[6]

Numerous cases similar to the *White Pass* case support the plaintiff-owners' contractual theory of recovery. Faced with facts similar to those in the instant case, the Minnesota Supreme Court held that an employer of an independent contractor was liable for its independent contractor's negligence which caused a water tower to collapse and damage a building owned by plaintiff United States Gypsum. Gypsum had contracted with the Kenny Boiler and Manufacturing Co. to manufacture and attach steel plates to help support a water tower on Gypsum land. Kenny manufactured the plates but subcontracted the work of attaching the plates. Gypsum alleged that the independent contractor's negligence caused the tower to collapse and that Kenny was liable for damages. Kenny claimed that it was not responsible for the negligence of its independent contractor. The court held that while Kenny could delegate

---

[6] "The theory of liability is that the contractor has agreed to perform the work specified in the contract. In the absence of a provision that he may subcontract the work and that the owner will look only to the subcontractor for compensation for damage if the work is not properly done, there is an implied undertaking on the part of the contractor to see that the work is performed with due care. As far as his relations with the owner are concerned, the subcontractor employed by him is his agent for whose negligence he is responsible to the owner . . . . The facts of this case do not show that a novation was ever intended and there is no contention that they do. Consequently, we hold that the respondent was liable for the subcontractor's negligence in performing the respondent's duty under its contract with appellant, and that the appellant's knowledge of the fact that the respondent had delegated its duties to a subcontractor did not affect that liability." *White Pass Co. v. St. John, supra,* 427 P. 2d at 401, 402.

the performance of the contract to another, this delegation did not relieve Kenny of the duty to act under the contract or of his duty to act with due care. "[I]n legal contemplation the acts of the subcontractor constituted defendant's (Kenny's) performance of his contractual duties," and Kenny is liable for damages suffered by Gypsum. *Pacific Fire Ins. Co. v. Kenny Boiler & Mfg. Co.*, 201 Minn. 500, 277 N.W. 226, 228 (1937).

In a case remarkably similar to the instant case, a federal district court applying Delaware law held that a general contractor could be liable for fire damage to a home caused by an independent contractor's negligence in installing a fireplace in that home. The federal court based its holding on the contractual relationship between the parties. The court went on to say, however, that the breach of contract may support an action based on tort as well as contract. The court pointed out that in numerous cases involving similar facts the courts did not indicate whether they were relying on tort or contract principles when they refused to accept the defendant's defense based on the independent contractor rule, *National Fire Ins. Co. of Hartford v. Westgate Const. Co.*, 227 F. Supp. 835, 838 (D. Del. 1964).

In a New Mexico case, the landowners sued the general contractors for the negligent construction of a car wash. Although the defendants argued that a general contractor is not liable for the torts of an independent contractor, the court affirmed a judgment for the landowners, relying on contract principles that the general contractor's contractual duty to use reasonable skill in the construction of the car wash was nondelegable. *Clear v. Patterson*, 80 N.M. 654, 459 P.2d 358, 361 (Ct. App. 1969).

240

Case law supports our holding that Hayes may be liable for the mason's negligence under a breach of contract theory.

## III.

Hayes asserts that the contract between himself and the plaintiff-owners does not play a pivotal role in the resolution of this case. Hayes rests his defense against the contract theory of the claim on two main contentions: (1) it is improper for the plaintiff-owners to raise in this court a breach of contract claim that they did not raise in the courts below;[7] and (2) Hayes would be liable for breach of contract for the mason's negligence only if he had hired the mason without the plaintiff-owners' knowledge and acquiescence. We shall address each of these contentions in turn.

The general rule is that this court will not consider arguments raised for the first time on appeal or review. *County of Columbia v. Bylewski*, 94 Wis. 2d 153, 171-72, 288 N.W. 2d 129, 138-39 (1980). Because the plaintiff-owners did in fact raise a claim for breach of contract in the circuit court and the court of appeals, Hayes' contention that the plaintiff-owners are precluded from raising a contractual theory of liability in this court fails.

---

[7] The court of appeals made a similar assertion. After the plaintiff-owners filed a petition to review in this court, the court of appeals reconsidered its decision on its own motion, sec. 809.24, Stats. 1983-84, and wrote an addendum to its opinion stating that the plaintiff-owners had not raised or briefed a contract claim before the court of appeals and that the court of appeals would not consider the plaintiff-owners' new contract claim.

The plaintiff-owners presented an argument to the circuit court that the contract had been breached. Although the circuit court ultimately analyzed the case at bar under the independent contractor rule, a defense peculiarly applicable to tort cases, the record shows that the circuit court also considered the case under a contract theory of liability. The circuit court discussed whether the *Medley* and *Sinclair Refining* cases, upon which we rely, applied, saying that the *Sinclair Refining* case "is more on all fours than it would appear." The circuit court also referred the parties to *Colton v. Foulkes*, noting that *Foulkes* "states the basis for predicating tort liability on contract."

Further, the plaintiff-owners presented a contract theory of recovery in their briefs to the court of appeals. The plaintiff-owners stated the issue before the court of appeals as follows: "whether or not a building contractor, who enters into a contract, is liable for the negligence of the subcontractors it chooses when the subcontractor's negligence causes injury to the homeowner with whom he has contracted." Court of appeals brief p. iii. The plaintiff-owners' brief argued that "under established Wisconsin law, Wayne Hayes ... could not bargain away the risks of performance it owed to the other party of the contract." Brief p. vii. The plaintiff-owners urged the court of appeals to recognize that Hayes "owed [them] a duty of reasonable care in constructing the Brooks' residence in a non-negligent manner. The defendant owed the plaintiffs these contractual obligations and failed to perform them." Brief p. 5. The plaintiff-owners' brief and reply brief urged the court of appeals to adopt the reasoning of the *Sinclair Refining* and *White Pass* cases, which analyze the defendant's liability under contract law.

In contrast, Hayes' brief before the court of appeals stated the issue on appeal in tort rather than in contract terms: "Is a broker of a predesigned, precut home vicariously liable for the negligent installation of the heatilator in the fireplace by a masonry subcontractor?" Court of appeals brief p. ii.

Each party characterized the issue in the case differently, each drawing on a line of cases that appeared favorable to that party. The circuit court's memorandum decision adopted Hayes' characterization of the issue without analyzing that of the plaintiff-owners. The court of appeals' decision blended and then rejected both the tort and contract theory of the action.

The court of appeals was not convinced by the cases cited by the plaintiff-owners in support of their contract theory. The court of appeals expressly refused to accept as persuasive authority *Continental Ins. Co. v. Bahcall,* 39 F. Supp. (E.D. Wis. 1941). *Bahcall* supported the plaintiff-owners' contention that the independent contractor rule is not applicable where the injured party is a party to a construction contract. Court of appeals slip opinion at pages 4–5. The court of appeals also distinguished *Sinclair Refining,* because there the obligee did not know about or assent to the independent contractor's hiring an independent contractor. The court of appeals blurred the contract theory set forth in *White Pass* with the tort independent contractor rule, stating that it could not find "any Wisconsin law which makes novation a prerequisite to the operation of the independent contract doctrine." Court of appeals slip opinion at page 7.

Based on our review of the record, the briefs, and the decisions of the circuit court and the court of appeals, we conclude that the plaintiff-owners did present a contract theory in both the circuit court and the

court of appeals and that both courts rejected this theory of the action.

We turn to Hayes' second argument. Hayes argues he is not liable for breach of contract for the mason's negligence because the plaintiff-owners knew about and acquiesced in his hiring the independent contractor.

We are not persuaded by Hayes' argument. Hayes has confused delegation of the performance of an obligation with delegation of responsibility for the performance of an obligation. The rule for delegation of the performance of a contractual obligation is that the obligor may delegate a contractual duty without the obligee's consent unless the duty is "personal." The rule for delegation of responsibility is that if the obligor delegates the performance of an obligation, the obligor is not relieved of responsibility for fulfilling that obligation or of liability in the event of a breach. The obligor under the contract is treated as having rendered the performance even when an independent contractor has rendered it, and the obligor remains the party liable for that performance if the performance proves to be in breach of the contract.[8]

Where the obligee consents to the delegation, the consent itself does not release the obligor from liability for breach of contract. More than the obligee's consent to a delegation of performance is needed to release the obligor from liability for breach of contract. For the obligor to be released from liability, the obligee must agree to the release. If there is an agreement between the obligor, obligee and a third party by which the third party agrees to be substituted for the obligor and the

---

[8] See text at note 5 *supra.*

obligee assents thereto, the obligor is released from liability and the third person takes the place of the obligor. Such an agreement is known as a novation.[9]

If Hayes is asserting that he and the plaintiff-owners modified the contract to release Hayes from liability for the performance of the independent contractor or that there was a novation by which he, the plaintiff-owners and the mason agreed to substitute the mason as obligor in place of Hayes, the circuit court made no such findings. This court cannot make such findings on this record.

For the reasons set forth, on the basis of this record we reject Hayes' two defenses. We conclude that the plaintiff-owners could raise the contract issue in this court and that the plaintiff-owners did state a claim for breach of contract.

## IV.

Hayes' principal argument is that this is a tort action and that he has a defense to the tort action under the independent contractor rule. The plaintiff-owners, Hayes, the circuit court, and the court of appeals apparently all agree that the facts of the case give rise to a tort action. The plaintiff-owners' complaint sets forth a typical tort claim alleging that the plaintiff-owners suffered property damage as a result of the mason's negligence and that Hayes is vicariously liable for the mason's tortious conduct.

---

[9] *See Bansbach v. Meuer*, 237 Wis. 454, 459, 297 N.W. 402 (1941); *T.W. Stevenson v. Peterson*, 163 Wis. 258, 261, 157 N.W. 750 (1916); Farnsworth, *Contracts*, sec. 11.11 (1982); Restatement (Second) of Contracts, secs. 280, 318 (1979).

The courts and commentators have recognized that there are facts that may give rise to both an action in contract and one in tort, and in such cases the plaintiff may choose between the two. Prosser & Keeton, *Torts*, sec. 92 (5th ed. 1984). According to conventional wisdom, a tort arises from a violation of some obligation imposed by law (ex delictu) and a breach of contract arises from a violation of an obligation assumed consensually (ex contractu). Especially when parties to a contract are disputing, tort and contract overlap, making it difficult to draw a clear distinction between the two. *See* Prosser & Keeton, *Torts*, sec. 92 (5th ed. 1984); Farnsworth, *Contracts*, sec. 1.6, pp. 15–20 (1982); Prosser, *The Borderland of Tort and Contract*, in SELECTED TOPICS ON THE LAW OF TORTS (1954), p. 380; Thornton, *The Elastic Concept of Tort and Contract as Applied by the Courts of New York*, 14 Bklyn L. Rev. 196 (1948); *Landwehr v. Citizens Trust Co.*, 110 Wis. 2d 716, 722–24, 329 N.W. 2d 411 (1983). The overlap between tort and contract is evident in this court's observation that "accompanying every contract is a common-law duty to perform it with care and skill, and a failure to do so is a tort as well as a breach of contract." *Fisher v. Simon*, 15 Wis. 2d 207, 212, 112 N.W.2d 705 (1961).

Some courts have viewed fact situations similar to the case at bar as actions for breach of contract, and others have treated such cases as giving rise to a tort action. Still others have treated the cases as giving rise to both tort and contract actions. Several courts have simply concluded that the general contractor is liable to the owner for property damage resulting from the negligence of the independent contractor without clearly

246

identifying whether they were relying on tort or contract principles.[10]

Courts recognizing this fact situation as giving rise to a tort action reject the independent contractor defense. Some courts find the independent contractor rule inapplicable in this fact situation because of the special, contractual duty owed by the employer of the independent contractor to the injured party. Others view this fact situation as falling within the nondelegable duty exception to the independent contractor rule.

■

Under the nondelegable duty exception to the independent contractor rule, a nondelegable duty "may be imposed by statute, *by contract*, by franchise or charter or by common law." Prosser & Keeton, *Torts*, sec. 71, p. 511 (5th ed. 1984) (emphasis added; notes omitted). There is a contract in this case. As we explained previously, under contract law Hayes may delegate performance of his duties under the contract but is liable to the plaintiff-owners for breach of contract when the independent contractor negligently performs under the contract, unless the plaintiff-owners released Hayes from liability. When the court speaks of a nondelegable duty under the independent contractor tort rule, the court means that a party cannot bargain away the risks of performance. *Arsand v. City of Franklin*, 83 Wis. 2d 40, 54, n. 8, 264 N.W.2d 579 (1978).

---

[10] In addition to the cases previously discussed, *see, e.g., Bd. Regents of U. Wash. v. Frederick & Nelson*, 90 Wash. 2d 82, 579 P. 2d 346 (1978); *Simpson v. Digiallonardo*, 29 Colo. App. 556, 488 P. 2d 208, 210 (1971); *Mills v. Kraus*, 114 So.2d 817, 820 (Fla. Ct. App. 1959); *Continental Ins. Co. v. I. Bahcall, Inc.*, 39 F.Supp. 315 (E.D. Wis. 1941).

The public policy requiring that the risk of performance be nondelegable is thus applicable to both tort and contract. *Compare* Restatement (Second) of Torts, sec. 409, Comment b. p. 371 (1963-64); Restatement (Second) of Agency, sec. 214, Comment a, p. 464 (1957); Restatement (Second) of Contracts, sec. 318 (3) (1979).

The court of appeals determined that this case did not fit within the nondelegable duty exception to the independent contractor tort rule, concluding that there was no "important policy" requiring the court to hold that Hayes' duty of due care was nondelegable. What the court of appeals overlooked, however, is that even in the absence of any public policy mandating that the risk remain with the obligor, the court must preserve the allocation of risk arrived at contractually between private parties. The court of appeals looked to public policy instead of looking to the contract between the parties to define a nondelegable duty. When the lawsuit is between the two parties to a construction contract, there does not appear to be any reason why a duty of due care arising by contract should be nondelegable when the duty is analyzed under contract principles and should be delegable when the action is viewed as a tort claim. *National Fire Ins. Co. of Hartford v. Westgate Const. Co., supra,* 227 F. Supp. at 838.

Hayes relies on sec. 429, Restatement (Second) of Torts (1965), to argue that an employer of the independent contractor is not liable in a tort action for the tortious conduct of an independent contractor if the employer has contracted with a party who is aware that an independent contractor has been hired to perform

248

the services promised by the employer. Section 429 states:

> "Negligence in Doing Work Which Is Accepted in Reliance on the Employer's Doing the Work Himself. One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants."

Section 429 states that if the employer of an independent contractor induces a party to believe that the person offering the services is the servant of the employer, the employer is liable. Hayes essentially argues that sec. 429 should be read to mean that the employer of the independent contractor is not liable in situations not covered by the section, namely where, as in this case, the employer of the independent contractor has not induced the party to believe that the person offering services is the servant of the employer. We can find no reason to read sec. 429 as establishing a rule for fact situations not set forth in that section.

We conclude that the circuit court and court of appeals erred in holding that Hayes could successfully defend a tort action in this case relying on the independent contractor rule.

### V.

We hold that Hayes could hire subcontractors to perform the construction contract but that Hayes' delegation of the performance part of the contract to an

independent contractor did not itself relieve Hayes of liability to the plaintiff-owners for property damage resulting from the breach of contract by the independent contractor's negligence. Furthermore we conclude that the plaintiff-owners have, in the alternative, a tort claim under the facts of this case.

■

Although we conclude that the plaintiff-owners have a good cause of action against Hayes, this court cannot make a final determination of Hayes' liability on the record before it. There are several issues that the circuit court did not consider because it simply applied the independent contractor rule as a complete defense to the action. For example, Hayes argues that the heatilator was not part of the construction contract and that he had no responsibility—in tort or contract—for it. Hayes has asserted that he either settled the claim or that the agreement reducing the purchase price constitutes an accord and satisfaction of all the plaintiff-owners' contract claims against Hayes. Finally Hayes argues that the plaintiff-owners were negligent in requesting contract modifications, maintaining the premises, and making changes and modifications in the home and fireplace after they took possession of the property, and their negligence caused the fire. We cannot decide these issues.

For the reasons set forth, we hold that Hayes may be liable for the mason's negligence and that the cause must be remanded to the circuit court for a new trial.

*By the Court.*—The decision of the court of appeals is reversed; the judgment of the circuit court is reversed; and the cause is remanded to the circuit court for a new trial.