IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 31, 2010 Session

FEDERAL INSURANCE COMPANY, A/S/O ROBERT AND JOANIE
EMERSON, v. MARTIN EDWARD WINTERS, D/B/A WINTERS
ROOFING COMPANY

Appeal from the Circuit Court for Hamilton County
No. 09C136      Hon. W. Neil Thomas, III., Judge

No. E2009-02065-COA-R3-CV - FILED OCTOBER 18, 2010

Plaintiff insurer of insured brought this action as a subrogee of the insureds, who had been
paid under plaintiff's policy for a fire loss to their home.  The insureds had employed a roofer
to replace their roof, whose subcontractor caused the fire which destroyed the home.
Plaintiff brought this action to recover from defendant roofer who filed a Motion for
Summary Judgment and the Trial Court ruled defendant could not be held liable in tort for
the negligent acts of his subcontractor under the facts of this case, and plaintiff could not
recover under the theory of contract, because plaintiff could not show that the loss was
caused by the contractual services or foreseeable.  On appeal, we hold that summary
judgment was inappropriate, because under contract law the defendant had a non-delegable
duty to see that the work he was contractually obligated to perform was done in a careful,
skillful and workmanlike manner.  The case is remanded with instructions to proceed in
accordance with this Opinion.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Reversed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which  D. MICHAEL
SWINEY, J., and JUDGE. JOHN W. MCCLARTY, joined.

Michael A. Durr, Charlotte, North Carolina, for the appellant, Federal Insurance Company.

John T. Rice, Chattanooga, Tennessee, for the appellee, Martin Edward Winters.

# OPINION

Plaintiff, Chubb National Insurance Company, as subrogee of Robert and Joanie Emerson, filed a Complaint against Martin Edwards, d/b/a Winters Roofing Company, alleging that the Emersons contracted with defendant for installation of a new roof on their home, and that after the work was completed, the Emersons noticed that the roof was leaking extensively and they contacted defendant, who sent an agent/employee to repair it on September 26, 2007.

Plaintiff alleged that a fire occurred on the roof that same day which caused substantial damage to his home and property, and that the fire was caused by defendant's employee/agent. Plaintiff alleged that it had paid for damages caused by the fire of more than $800,000.00.

Plaintiff asserted that defendant was negligent and failed to complete installation of the roof with reasonable care and that defendant was liable for breach of contract, and sought payment of the claims that it had paid to the Emersons.

Defendant moved for summary judgment, stating he did not participate in the work performed at the Emersons' home, and claimed that he had sublet the work to a subcontractor, which he did not supervise. In defendant's Statement of Facts, he stated that he had subcontracted the repair work to Bruce Jacobs, and that Jacobs signed a subcontract agreement stating that he would be responsible for any damage caused by his work and that Winters was not present while the work was being done and did not instruct, supervise, nor participate in said work.

Defendant filed his own affidavit affirming these facts.

Plaintiff moved to amend its Complaint, seeking to substitute Federal Insurance Company as the named plaintiff, and further asserted that defendant made representations on his website that he carried liability insurance and that this was a factor in Emersons' decision to hire him, and that the Emersons did not authorize defendant to subcontract the work.

Plaintiff filed a Response in opposition to the Motion for Summary Judgment, asserting that Winters failed to negate plaintiffs' claim that he breached his contract with the Emersons by failing to complete the work carefully and with liability insurance coverage. Plaintiff filed the affidavit of Robert Emerson, who stated that he based his decision to hire Winters on the representation on Winters' website, including the representation that he carried general liability insurance. Emerson stated that his contract with Winters was oral,

and that he agreed to pay Winters $17,832.00 to replace the roof on his home and that he presumed Winters would perform the work in accordance with the representations on his website. He further stated that the roof work that was done when the fire occurred was within the scope of the work he contracted with Winters to perform.

Plaintiff attached a copy of Winters' deposition, wherein he stated that he was the owner and employee of Winters Roofing Company, and that he was capable of doing small repairs, but could not replace an entire roof. Winters stated that after being contacted by the Emersons, he drew up a written proposal for replacing the Emersons' roof, which included a five year warranty on the workmanship. The proposal was never put into evidence, however. Winters stated that when the Emersons hired him, he contracted with Terry Monk to do the work. Winters admitted his proposal said nothing about his using subs to do the work, and that he never told Emerson that the work would be done by a sub.

Winters stated that the work took about two weeks and he did not personally do any of it. He stated that about a month after the roof was replaced, the Emersons contacted him and said they had a leak, so he sent Monk to fix it, and that there were three leaks over time and Monk fixed them all. Winters stated that Emerson called him a few weeks later and said there were still leaks at the drain, so Winters had another sub, Bruce Jacobs, to fix that leak. Jacobs looked at the drain and determined that it wasn't sealed properly, so he agreed with Winters on a price to fix it. Winters concluded that the Emersons never asked him about insurance.

Winters testified that Jacobs used a propane torch, called Red Dragon, when doing the repair work to heat the material in and around the drain. Winters testified that the fire occurred during a time when his insurance was lapsed, but that he saw his agent a few days later and bought insurance.

The Court entered a Memorandum and Judgment, and found that defendant could not be held liable in tort for the negligent act of a subcontractor, unless the defendant was shown to have negligently hired the subcontractor, or was shown to have exercised control over the work performed by the sub. The Court ruled that to prevail under contract law, plaintiff would have to show that the damages were caused by the contracted-for services, and were foreseeable. The Court found that none of these things had been shown by the plaintiff and summary judgment was appropriate.

The Trial Court supplemented the record with the fire investigation report produced in response to discovery, which concluded that Jacobs' use of the propane torch was what caused the fire to start.

The issues raised on appeal are:

1.    Did the Court err in granting summary judgment?

2.    Is the appeal frivolous?

Plaintiff first argues that the Trial Court erred in granting summary judgment on plaintiff's breach of contract claim, because Winters never delivered a functional roof as he agreed to do. Winters admitted he was hired to put a new roof on the home and he warranted his work, and the roof had extensive leaks, causing him to send someone out to try to repair it, although it was never completely fixed. Thus, viewing the facts in the light most favorable to plaintiff, plaintiff established that this claim is valid and that defendant did nothing to negate it. Plaintiff should have been allowed to proceed on the breach of contract claim for the amount it paid Winters to install a new roof.[1]

The issue thus becomes whether plaintiff can seek damages in this instance for the additional damages done by the fire. The Trial Court found that it would not be proper because these damages were not a foreseeable part of the contract.[2] The Court also ruled that such damages were not recoverable in tort under the general rule that a general contractor should not be held liable for a subcontractor's negligence absent a showing of negligent hiring or exercise of control. The Court did not, however, rely upon the defendant's non-delegable, contractual duty to make sure the work was performed skillfully, carefully, and in a workmanlike manner.

It has been recognized that the "general rule throughout the United States is that there is 'implied in every contract for work or services a duty to perform it skillfully, carefully, diligently, and in a workmanlike manner.'" 17A Am. Jur. 2d., Contracts § 627; *Crabb v. Swindler, Administratrix*, 337 P.2d 986 (Kan. 1959). Tennessee has recognized this implied contractual duty in construction case. *Bowling v. Jones*, 300 S.W.3d 288 (Tenn. Ct. App. 2008). Other states have held that this duty applies not only in cases involving the

---

[1] Defendant argues that plaintiff did not adequately raise its issues regarding breach of contract at the trial court level, but a review of the pleadings demonstrates that plaintiff pled breach of contract both in the original Complaint and in its Amended Complaint.

[2] Defendant argues that the Trial Court found the existence of two separate contracts, i.e., the contract to install the roof and then a second contract to repair it, but a review of the Court's Memorandum Opinion shows that the Court was simply explaining that the contract was for installation of a new roof, and that it was not foreseeable that a fire would result two months after said installation was complete. The Court does not find that there were two separate contracts, and the proof would not support such a finding.

construction of an entire residence, as was the case in *Bowling*, but also to remodel/repair contracts. *See, White Pass Co. v. St. John*, 427 P.2d 398 (Wash. 1967). Tennessee has not ruled that this implied duty does apply to remodeling/repair contracts.

It is clear that this implied contractual duty is non-delegable. As this Court explained in *Bowling:*

> [Defendant general contractors] contend that they were improperly held liable for what was actually the defective workmanship of various subcontractors they hired to assist in construction of the house. In their appellate brief, the [defendants] "contend that the subcontractors used in construction of the home were that of independent contractor status and therefore [defendants] were not ordinarily liable for the negligence of an independent contractor." Apparently, the [defendants] argue that if there were problems with the work performed by the individuals they employed, the Andersons recourse is to sue those individuals, and the [defendants] themselves are not contractually liable. We find no merit in this argument. The [defendants] had a contractual duty to construct the house to completion and to perform the construction in a workmanlike manner. Their unilateral delegation of work to third parties did not absolve them of this duty.

*Bowling v. Jones*, 300 S.W.3d 288, 295 (Tenn. Ct. App. 2008).

Similarly here, Winters' decision to subcontract out the roofing/repair work does not absolve him of his contractual duty to insure that the work was performed in a skillful, careful, and workmanlike manner.

Other jurisdictions are in accord. For example, in the Wisconsin Supreme Court case of *Brooks v. Hayes*, 395 N.W.2d 167 (Wis. 1986), the plaintiff landowners sued the defendant general contractor who had constructed plaintiffs a pre-fab home for damages caused by a fire that occurred due to faulty installation of a fireplace by the masonry subcontractor. The Court stated:

> The plaintiff-owners contend that although the construction contract was silent with regard to the level of performance or standard of care required of Hayes or the subcontractors, the contract implicitly imposes on Hayes the duty to perform with due care. We agree with the plaintiff-owners' interpretation of the contract and, for purposes of this review, Hayes has not disputed this interpretation of the construction contract. The plaintiff-owners' interpretation is supported by *Colton v. Foulkes*, 259 Wis. 142, 146, 47 N.W.2d 901 (1951), in which the court adopted the rule that "accompanying every contract is a common-law duty to perform with care, skill,

reasonable expediency and faithfulness the thing they agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of contract." . . . . Although Hayes assumed a contractual duty to the plaintiff-owners to perform the construction contract with skill and due care, Hayes delegated the performance of the contract to others. The question then is whether the delegation of performance of the masonry work relieved Hayes of liability for breach of contract when the mason, an independent contractor, negligently performed that part of Hayes' contractual obligation.

The plaintiff-owners assert that Hayes may not avoid responsibility to them for his failure to perform his contractual duty of due care merely by hiring an independent contractor. We agree with this assertion. The hornbook principle of contract law is that the delegation of the performance of a contract does not, unless the obligee agrees otherwise, discharge the liability of the delegating obligor to the obligee for breach of contract.

\* \* \*

Of the case law from other jurisdictions that supports the plaintiff-owners' contractual theory of Hayes' liability, the plaintiff-owners rely predominantly on *White Pass Co., v. St. John*, 71 Wash.2d 156, 427 P.2d 398 (1967). In *White Pass*, the owner of a ski lodge had contracted with a general contractor to enlarge the lodge, and the general contractor employed an independent contractor to work on the lodge. The independent contractor's negligence caused a fire that damaged the lodge and equipment, and the owner of the lodge sued the general contractor for damages. Despite the independent contractor rule, the court held the general contractor liable for the independent contractor's negligence. The court relied on well-recognized principles of contract law: (1) an obligor may delegate performance of a duty so long as the contract does not require personal performance; (2) the performance of the contract by another is, as a matter of law, performance by the original obligor; (3) the original obligor is liable to the obligee if the assignor's performance is defective. The *White Pass* court concluded that the owner's mere knowledge that the work is being done by a subcontractor is not generally sufficient to relieve the general contractor of his contractual obligation.[3]

---

[3]This footnote provides:
"The theory of liability is that the contractor has agreed to perform the work specified in the contract. In the absence of a provision that he may subcontract the work and that the owner will look only to the subcontractor for compensation for damage if the work is not properly done, there is an implied
(continued...)

-6-

Numerous cases similar to the *White Pass* case support the plaintiff-owners' contractual theory of recovery. Faced with facts similar to those in the instant case, the Minnesota Supreme Court held that an employer of an independent contractor was liable for its independent contractor's negligence which caused a water tower to collapse and damage a building owned by plaintiff United States Gypsum. Gypsum had contracted with the Kenny Boiler and Manufacturing Co., to manufacture and attach steel plates to help support a water tower on Gypsum land. Kenny manufactured the plates but subcontracted the work of attaching the plates. Gypsum alleged that the independent contractor's negligence caused the tower to collapse and that Kenny was liable for damages. Kenny claimed that it was not responsible for the negligence of its independent contractor. The court held that while Kenny could delegate the performance of the contract to another, this delegation did not relieve Kenny of the duty to act under the contract or of his duty to act with due care. "[I]n legal contemplation the acts of the subcontractor constituted defendant's (Kenny's) performance of his contractual duties," and Kenny is liable for damages suffered by Gypsum. *Pacific Fire Ins., Co., v. Kenny Boiler & Mfg., Co.,* 201 Minn. 500, 277 N.W. 226, 228 (1937).

In a case remarkably similar to the instant case, a federal district court applying Delaware law held that a general contractor could be liable for fire damage to a home caused by an independent contractor's negligence in installing a fireplace in that home. The federal court based its holding on the contractual relationship between the parties. The court went on to say, however, that the breach of contract may support an action based on tort as well as contract. The court pointed out that in numerous cases involving similar facts the courts did not indicate whether they were relying on tort or contract principles when they refused to accept the defendant's defense based on the independent contractor rule, *National Fire Ins. Co., of Hartford v. Westgate Const., Co.,* 227 F. Supp. 835, 838 (D.Del. 1964).

In a New Mexico case, the landowners sued the general contractors for the negligent

---

[3](...continued)

undertaking on the part of the contractor to see that the work is performed with due care. As far as his relations with the owner are concerned, the subcontractor employed by him is his agent for whose negligence he is responsible to the owner . . . . The facts of this case do not show that a novation was ever intended and there is no contention that they do. Consequently, we hold that the respondent was liable for the subcontractor's negligence in performing the respondent's duty under its contract with appellant, and that the appellant's knowledge of the fact that the respondent had delegated its duties to a subcontractor, did not affect that liability." *White Pass Co., v. St. John*, supra, 427 P.2d at 401, 402.

construction of a car wash. Although the defendants argued that a general contractor is not liable for the torts of an independent contractor, the court affirmed a judgment for the landowners, relying on contract principles that the general contractor's contractual duty to use reasonable skill in the construction of the car wash was nondelegable. *Clear v. Patterson*, 80 N.M. 654, 459 P.2d 358, 361 (Ct. App. 1969).

*Brooks v. Hayes,* 395 N.W.2d 167 (Wis. 1986).

We conclude the Court erred in failing to find that the defendant had a non-delegable duty to see that the work he was contractually obligated to perform was done in a careful, skillful, and workmanlike manner. The summary judgment was not appropriate, based solely on the fact that the work in question was performed by a sub-contractor. The fact that the sub-contractor used a torch which damaged the Emersons' home is not in dispute, since defendant ultimately had the duty to make sure that the work on the roof was done in a careful, skillful, and workmanlike manner, and it was shown that it was not, summary judgment was not appropriate.

The Court also erred in failing to consider plaintiff's claim that defendant was bound by the representations contained in its website. Emerson stated that defendant's website contained representations that he had liability insurance, and this was a part of Emerson's basis for contracting with him. Defendant did not dispute this, and admitted that his website probably did make this claim, even though he had a "lapse" of insurance at the time these incidents occurred. Viewing the facts in the light most favorable to plaintiff, the Court failed to consider that defendant could have been liable for misrepresenting his insured status.

For all of the foregoing reasons, we reverse the summary judgment granted to defendant and remand for further proceedings consistent with this Opinion.

Having found the Trial Court erred, this appeal is not considered to be frivolous.

We reverse the Trial Court's grant of summary judgment and remand, with the cost of the appeal assessed to the defendant, Martin Winters.


_____
HERSCHEL PICKENS FRANKS, P.J.