NO.   94-490

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

BRIAN ROBERT CONTRERAS,

      Plaintiff and Appellant,

-v-

VANNOY HEATING & AIR
CONDITIONING, INC.

      Defendant and Respondent.

FILED

MAR 30 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        James D. Walen, Stacey & Walen, Billings, Montana

        For Respondent:

        Don M. Hayes, Herndon, Hartman, Sweeney & Halverson,
        Billings, Montana

Submitted on Briefs:  January 26, 1995

Decided:  March 30, 1995

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court

This is an appeal from a jury verdict in the Thirteenth Judicial District court, Yellowstone county, finding for defendants. We affirm.

We consider the following issues on appeal:

I. Did the District Court err when it denied plaintiff's motions for partial summary judgment and for directed verdict on the issue of liability?

II. Did the District Court improperly instruct the jury?

Brian Contreras (Contreras) worked for the City of Billings on June 30, 1987, when the explosion that is in controversy here occurred. Contreras was a fifteen year old and worked through the District Seven Human Resources Development Council, an agency that provides employment and training for underprivileged minors. Contreras worked as a maintenance trainee at the Parmly Library Building.

On June 30, 1987, Contreras's supervisor, James Southworth (Southworth), instructed Contreras to clean the boiler room situated on the fourth floor of the building. While cleaning the room with a backpack vacuum cleaner, Contreras hit a valve on a gas line, approximately six inches from the boiler. The valve fell off the gas line and natural gas began to leak out of the line.

Contreras ran after Southworth who immediately came to the boiler room and unsuccessfully attempted to stop the leak. A pilot light on the boiler ignited the gas and an explosion resulted, causing Contreras severe burns.

2

Contreras filed a complaint on June 20, 1990, against the City of Billings, Southworth, and a number of John Does. Southworth and the City of Billings were dismissed following their motion for summary judgment. Contreras then amended his complaint to add Vannoy Heating & Air Conditioning, Inc. (Vannoy) as a defendant. Vannoy had a contract with the library for the heating, ventilating and air conditioning system (HVAC) maintenance. Contreras alleged he would not have been injured had Vannoy inspected the valve as it was required to do.

Both parties filed cross motions for summary judgment which were denied on March 15, 1994. Trial was held on April 18, 19 and 20, 1994, followed by both parties' move for a directed verdict. Both were denied. On April 25, 1994, the jury found that Vannoy was not negligent. Contreras' May 9, 1994, motion for a new trial was denied on May 25, 1994. Contreras appeals from the judgment entered for defendant Vannoy.

## I.

Did the District Court err when it denied plaintiff's motions for partial summary judgment and for directed verdict on the issue of liability?

Contreras argues that under its contract, Vannoy was responsible for all hand valves in the HVAC system and that the gas shut off valve was such a hand valve. Contreras also contends that no one from Vannoy ever inspected the valve; and because the contract specifically calls for inspection of the system of which the valve was a part, the court should have directed a verdict or

granted partial summary judgment to Contreras.

Vannoy argues that the gas shut off valve was a nonmaintainable part of the system for which it had no responsibility under the contract. Vannoy further asserts that the contract is ambiguous concerning the valve in question and the jury had the responsibility to decide whether Vannoy had a duty or not.

If there is any evidence that warrants submission to the jury, a directed verdict is inappropriate. Kearney v. KXLF Communications, Inc. (1994), 263 Mont. 407, 869 P.2d 772. A party is entitled **to summary** judgment only if no genuine issues of material fact exist and it is entitled to judgment as a matter of law. McDonald v. Anderson (1993), 261 Mont. 268, 862 P.2d 402. In order to prove any claim of negligence, a party has to show duty, breach of that duty, and resulting damage caused by the defendant. Lindey's v. Goodover (1994), 264 Mont. 449, 872 P.2d 764.

The court denied summary judgment because it determined that genuine issues of material fact existed. Following the trial, the court denied both plaintiff's and defendant's motion for directed verdict.

In order for Contreras to be granted summary judgment or a directed verdict on the issue of Vannoy's liability, he had to show that all evidence submitted proves that Vannoy had a duty to Contreras and that it breached that duty. Contreras argues that the existence of a legal duty is a question of law for the court. If there are issues of fact as to the presence or absence of a duty owed to the plaintiff, then the court must instruct the jury to

4

make the initial fact determination, and then apply the correct standard as furnished by the court.  Olson v. Kayser (1973), 161 Mont. 241, 505 P.2d 394.

The two parties presented facts demonstrating a controversy as to the existence of a duty owed to Contreras.  To make a determination as to the presence of a duty, the jury had to decide whether the valve was a "hand valve" or a "nonmaintainable" part of HVAC or not a part of HVAC at all.  Contreras argues that the valve was a hand valve and under the contract repair and maintenance of all hand valves was required.  Contreras also referred to another part of the contract which required Vannoy to inspect the entire system and he contends the valve was a part of the system.

Vannoy introduced evidence which demonstrated that the valve was not a part of the HVAC system.  Vannoy pointed out that if the valve was part of the piping and duct work on the boiler, then Vannoy was not responsible for inspection or maintenance. Witnesses Aron Schenk and Rod Putnam testified that the valve in question was not part of their responsibility under the contract between Vannoy and the City of Billings. Southworth testified that his maintenance staff worked on valves such as this and only called Vannoy when there was a problem.  There is substantial evidence from which the jury could have concluded that under its contract, Vannoy was not responsible for the valve.

In addition to employees of Vannoy, Vannoy presented evidence that the company responsible for the HVAC system before Vannoy took over the contract did not consider the valve as part of its

5

responsibility to inspect or repair. Also, an engineer testified that it was possible to consider the valve as part of the piping and duct work for which Vannoy had no responsibility.

We conclude there were significant issues of material fact which precluded summary judgment. In a similar manner, there remained significant issues of fact as to the presence or absence of a duty owed to Contreras which precluded a directed verdict.

Depending on which set of facts the jury believed, a different duty would ensue. The fact finder had to determine whether the contract was applicable to the valve in question and then, if it was applicable, which section of the contract described the valve in question: the section relating to hand valves as being within Vannoy's scope of responsibility or the section that describes non-maintainable parts of the system for which Vannoy did not have responsibility. There is no way the duty and breach elements of negligence could have been determined without a determination of which facts were applicable.

Both sides also presented testimony about the element of causation. Vannoy contended that Contreras was responsible for his own injury. Vannoy's manager testified that if the valve had been damaged prior to Contreras' hitting it with the vacuum cleaner, gas would have been leaking from the valve. Contreras' own supervisor, Southworth, who had been in the boiler room a short while before the explosion, testified that there was no gas odor before Contreras hit the valve. The State Boiler Investigators who inspected the boiler in 1986, passed the boiler after an inspection

found everything in working condition. Thus, evidence was presented that the valve did not leak. Further, Southworth testified that when he smelled the strong gas odor on the fourth floor after being summoned by Contreras, he yelled for everyone to get out because the boiler was going to blow. Contreras did not move from the doorway of the boiler room. We finally conclude that substantial evidence was presented from which the jury could have determined that the actions of Vannoy did not cause Contreras' injury.

The record shows that both sides produced evidence and testimony to support their arguments concerning all three elements of negligence in contention: duty, breach of duty, and causation. Because of the conflict in the evidence as to the duty on the part of Vannoy, the court instructed the jury as follows:

### Instruction #10

Plaintiff contends Defendant had a duty under the maintenance contract between Defendant and the City of Billings to maintain and service the valve which caused the explosion. Plaintiff further contends that Defendant had the duty to exercise reasonable care and skill in inspecting, servicing and maintaining the HVAC system. Defendant contends it did not have a duty under the maintenance contract between it and the City of Billings to maintain and service the valve which caused the explosion.

In resolving the question of Defendant's duty, the jury may consider the contract, exhibit 9, the intent of the parties when they made the contract and the actions of the parties in fulfillment of the contract.

The court went on to instruct the jury about all facets of negligence including the burden of proof and elements of negligence, proximate causation, and intervening cause. While we do not know from the jury verdict which element of negligence was

7

not proven to the jury's satisfaction, the record indicates that they were instructed properly concerning the negligence theory.

We conclude that summary judgment would have been inappropriate because genuine issues of material fact existed as to Vannoy's liability. A directed verdict on the issue of liability would have been inappropriate because the determinative question in this case was one of fact and both sides presented facts to support their positions. The District Court did not err in denying the motion for partial summary judgment and the motion for directed verdict on the issue of liability.

## II.

Did the District Court improperly instruct the jury?

Contreras argues that the court improperly instructed the jury by not giving instructions on his theory of the case. Vannoy argues that the instructions were appropriate and presented an accurate view of the law. It is within the District Court's discretion to decide how to instruct the jury, taking into account theories of contending parties, and we will not overturn the court except for abuse of discretion. Hall v. Big Sky Lumber & Supply, Inc. (1993), 261 Mont. 328, 863 P.2d 389.

### Plaintiffs Proposed Instructions #20, 20A, 20B and 20C

Contreras argues that he was denied a fair trial because the court did not give these four instructions and, therefore, the jury was denied consideration of his side of the case. The above instructions acted to direct a verdict on the element of duty: "You are instructed that the gas hand valve in question was covered

8

by the HVAC Maintenance Agreement . ." Proposed instruction #20. This assumes facts in question. All four instructions were worded to direct the jury that Vannoy had a duty under the contract. The court did not err in failing to give these four instructions.

<u>Plaintiff's Proposed Instruction #17, 24, and 25</u>

Contreras argues that these instructions were needed to properly present his theory of the case. A review of these instructions reveals that they are duplicitous and not correct statements of the law.

Proposed Instruction #17 states:

> More than one person may be liable for causing an injury. A defendant may not avoid liability by claiming that some other person (whether or not named as a defendant in this action) helped cause the injury.

The idea of multiple liable parties was handled adequately by the court's instructions #10 through 18. The proposed wording is not totally accurate because it does not present the entire picture to the jury. The court's instructions #13 and #14 talk about the specifics of both plaintiff's and defendant's burden of proof for their theories of liability.

Proposed Instruction #24 states:

> Where one has negligently caused a condition of danger, he is not relieved of responsibility for damage caused to another merely because the injury also involved the later misconduct of someone else, if that conduct was foreseeable.

The court gave instead Instruction #18:

> An intervening cause does not relieve an actor from liability for his negligent acts where the intervening cause is one which the defendant might reasonably anticipate under the circumstances.

9

a duty which, we have already stated, cannot be assumed under the facts of this case.

Proposed Instruction #21 stated:

> Defendant and its employees owed a duty to perform its work with reasonable care and skill so as not to cause injury to the person of another.

The court gave instruction #11 which stated that "Every person" is responsible for injury to the person or property of another, caused by his or her negligence. Contreras' version is confusing as it could be construed by the jury as a directed verdict on the element of duty. As mentioned before, whether the element of duty was satisfied depended upon the set of facts that the jury found to be true.

### Plaintiff's Proposed Instruction #23

Contreras offered Proposed Instruction #23 which stated:

> A legal doctrine called "res ipsa loquitur" is involved in this case. The meaning of the term is, "it speaks for itself." Under this doctrine, even though negligence has not been proven by other evidence, you may infer negligence from the circumstances surrounding an event if you find from a preponderance of the evidence that: (1) the event is of a kind which ordinarily does not occur in the absence of negligence; (2) other causes, including the conduct of the plaintiff and other persons, have been sufficiently eliminated by the evidence.

Contreras argues that this is a "classic res ipsa loquitur" case. That is not accurate.

> Res ipsa loquitur does not permit the presumption of negligence; a plaintiff must make a prima facie case that defendant breached a duty of care before the question goes to the jury.

Clark v. Norris (1987), 226 Mont. 43, 48, 734 P.2d 182, 185. The elements of duty and breach of duty were very much in question

11

under the facts of this case.

Further, the doctrine of res ipsa loquitur encompasses an element of "exclusive control" of the instrumentality involved. Dalton v. Kalispell Hospital (1993), 256 Mont. 243, 846 P.2d 960. The "instrumentality" involved, the valve, would have to have been under the exclusive control of Vannoy. Control is a significant issue in the case. Further, the key to the boiler room hung on a hook in an adjoining room where anyone could have taken it. Contreras cannot use this theory to bypass presentation of evidence on the elements of negligence.

We conclude that the court properly instructed the jury on all theories of the case and on the appropriate law. We hold that the District Court did not abuse its discretion in instructing the jury.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

12