The ST. PAUL COMPANIES, formerly
United States Fidelity &
Guaranty, Plaintiff,

v.

CONSTRUCTION MANAGEMENT
COMPANY, LTD., Fullerton Management Group, Nick Fullerton, Nick Fullerton·Architects, P.C., and Glen D. Kellogg ̀d/b/a Kellogg Electric, Defendants.

No. CV–98–96–BU–PGH.

United States District Court,
D. Montana,
Butte Division.

May 5, 2000.

Stephen M. Barrett, Kirwan & Barrett, PC, James M. Kommers, Kommers & Roth, Bozeman, MT, for St. Paul Companies.

Dolphy O. Pohlman, Corette Pohlman & Kebe, Butte, MT, for Construction Management Co., Ltd.

Michael J. Lilly, Berg, Lilly, Andriolo & Tollefsen, Lynda S. White, Sedivy, Bennett & White, Bozeman, MT, for Fullerton Architects, Nick Fullerton and Nick Fullerton Architects, P.C.

Lynda S. White, Sedivy, Bennett & White, Bozeman, MT, for Glen D. Kellogg.

## MEMORANDUM and ORDER

HATFIELD, Senior District Judge.

Plaintiff, the St. Paul Companies (formerly United States Fidelity and Guaranty Insurance Company (USF & G), referred to collectively herein as "St. Paul"), instituted the present subrogation action against defendants seeking reimbursement for money paid to its insureds, Bruce and Carolyn Erickson ("Ericksons"), resulting from a fire that destroyed the Ericksons' home while it was under construction. The named defendants, Construction Management Company, Ltd. ("Construction Management"), Fullerton Management Group,[1] Nick Fullerton, Nick Fullerton Architects, P.C., and Glen Kellogg d/b/a Kellogg Electric ("Kellogg"),[2] were responsible for designing and/or building the home. St. Paul seeks monetary damages from the defendants premised upon the following claims for relief: (1) breach of contract; (2) negligence; and (3) breach of warranty.

Presently before the court are the following motions:

1. Construction Management's motion, with which Nick Fullerton and Nick Fullerton Architects, P.C. (referred to collectively herein as "the Fullerton defendants") have joined, for partial summary judgment on the issue of whether Construction Management or the Fullerton defendants may be held vicariously liable for the negligence of Kellogg.

2. The joint motion of Construction Management and the Fullerton defendants for partial summary judgment regarding St. Paul's negligence claim to the extent it is premised on the doctrine of *res ipsa loquitur*.

3. The Fullerton defendants' motion for partial summary judgment regarding St. Paul's negligence claim to the extent St. Paul has alleged negligence based on negligent design.

Having reviewed the record herein, together with the parties' briefs in support of their respective positions, the court is prepared to rule.

## BACKGROUND

The Fullerton defendants designed and prepared plans for the construction of a home for the Ericksons. Construction Management, which was operated by Nick Fullerton and an individual named Pat Johnson, was the general contractor for the project.[3] In working on the Erickson home, the Fullerton defendants and Construction Management employed a "design/build" concept, which allows the customer to deal with only one point of contact for the design and construction of a home. Construction Management hired Kellogg as an independent contractor to provide the home with an electrical system.

---

1. The parties dispute the existence of Fullerton Management Group. St. Paul alleges Fullerton Management Group is an independent entity comprised of various individuals and entities who performed services relative to the construction of the Erickson home. Defendants Nick Fullerton and Nick Fullerton Architects, P.C., contend there is no entity known as Fullerton Management Group. Resolution of this dispute is not necessary to the court's determination of the motions at bar.

2. All of St. Paul's claims asserted against Kellogg have been settled. By Order issued March 22, 2000, the court dismissed Glen D. Kellogg d/b/a Kellogg Electric from this action with prejudice.

3. Nick Fullerton, Nick Fullerton Architects, P.C., and Pat Johnson each held a one-third ownership interest in Construction Management.

The Ericksons contracted independently with other entities, which are not parties to this action, for other projects in connection with the construction of their home. In this regard, the Ericksons contracted with: McCall Pool for wiring of swimming pool controls; Service Outdoor for installation and wiring of garage doors; Avitel Electronics for installation and wiring of a home stereo and sound system; TRI for installation and wiring of a telephone system; and Diamond Sprinkler for installation and wiring of an underground sprinkler system.

On November 5, 1995, a fire completely destroyed the Erickson home, which was then approximately 90% complete. St. Paul paid the Ericksons $1,123,280.00 for destruction of the home in accordance with its policy of insurance to indemnify the Ericksons for loss by fire. St. Paul is subrogated to the interests of the Ericksons for all sums paid to them pursuant to the insurance policy.

St. Paul believes the fire was likely caused by improperly installed wiring leading to the electric motor that serviced the overhead garage door opener in bay number 3 in the garage. St. Paul has asserted that Kellogg negligently installed the specific electrical components in the home that caused the fire, thus giving rise to the instant action.

### DISCUSSION[4]

1. *Motion for Partial Summary Judgment Regarding Vicarious Liability.*

Construction Management and the Fullerton defendants seek summary dismissal of St. Paul's negligence claim on the ground that Kellogg was an independent contractor for whose negligence they are not liable. Construction Management and the Fullerton defendants first argue that because Kellogg was an independent contractor on the project and not their employee, liability cannot be imputed to them under the doctrine of *respondeat superior*. Vicarious liability under a *respondeat superior* theory is not, however, the operative issue here. It is undisputed that Kellogg was not an employee of either Construction Management or the Fullerton defendants, but rather an independent contractor. Thus, liability based on *respondeat superior* is not implicated. *See, e.g., Gentry v. Douglas Hereford Ranch, Inc.,* 290 Mont. 126, 962 P.2d 1205, 1211 (Mont.1998).

Construction Management and the Fullerton defendants next argue that they cannot be held liable for Kellogg's negligence under the "independent contractor rule," which provides that an employer is not liable for the negligence of an independent contractor, and that none of the exceptions to the rule applies under the circumstances of this case. The parties devote a good portion of their briefs to discussion of the general rule in Montana that owners or general contractors may not be held liable for injuries suffered by the employee of an independent contractor or subcontractor, and to the rule's "catalog" of exceptions. *See, e.g., Kemp v. Big Horn County Elec. Coop.,* 244 Mont. 437, 798 P.2d 999, 1001 (Mont.1990) (citing cases); *Shannon v. Howard S. Wright Const. Co.,* 181 Mont. 269, 593 P.2d 438, 441 (Mont.1979). The situation that invokes application of that rule and its exceptions, however, is not the precise issue before the court. Here, the injured party is the project's owner, not an employee of the independent contractor.

█ The precise issue before the court is whether a general contractor may be held vicariously liable to the owner of a construction project for the negligence of an independent contractor. This issue is one of first impression in Montana.[5]

---

4. This being a diversity action, the law of Montana governs the substantive rights and obligations of the parties. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

5. When presented with an issue of substantive law as to which there has not been a definitive ruling by the Montana Supreme Court, this court must predict how the Montana Supreme Court will rule if confronted with this issue of law. *Meredith v. Winter Haven,* 320

In addressing this issue, the court finds most persuasive those decisions from other courts that have held that a general contractor, who has a duty to perform a construction contract with due care and in a good and workmanlike manner, may be liable to the owner for damages when an independent contractor hired by the general contractor performs negligently and causes property damage to the owner. *See, e.g., Brooks v. Hayes*, 133 Wis.2d 228, 395 N.W.2d 167, 168 (1986); *Board of Regents of the University of Washington v. Frederick & Nelson*, 90 Wash.2d 82, 579 P.2d 346, 348 (1978) *(en banc)*; *White Pass Co. v. St. John*, 71 Wash.2d 156, 427 P.2d 398, 400–02 (1967); *Clear v. Patterson*, 80 N.M. 654, 459 P.2d 358, 361 (1969); *National Fire Ins. Co. of Hartford v. Westgate Const. Co.*, 227 F.Supp. 835, 836–38 (D.Del.1964); *Pacific Fire Ins. Co. v. Kenny Boiler & Mfg. Co.*, 201 Minn. 500, 277 N.W. 226, 228 (1937).

■ In the instant case, it is indisputable that Construction Management and the Fullerton defendants had an agreement with the Ericksons to design and build a home. In Montana, a contractor has a common law duty to construct a home in a good and workmanlike manner. *Carroccia v. Todd*, 189 Mont. 172, 615 P.2d 225, 227 (1980); *Mitchell v. Carlson*, 132 Mont. 1, 313 P.2d 717, 721–22 (1957). Thus, the agreement for construction of the home imposed upon Construction Management and the Fullerton defendants a duty to build the home in a good and workmanlike manner. They are not permitted to avoid this duty simply by engaging the services of others to fulfill their obligation to perform. *See, e.g., Brooks*, 395 N.W.2d at 170–75; *National Fire*, 227 F.Supp. at 837–38.

In this court's opinion, and based on the ample authority cited *supra*, Construction Management and the Fullerton defendants cannot escape liability for failure to fulfill their duty to build the home with due care

U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943); *Molsbergen v. United States*, 757 F.2d 1016, 1020

and in a good and workmanlike manner by arguing that it was the independent contractor's alleged negligence, and not their own, that caused the fire and ensuing damages. Construction Management's motion, with which the Fullerton defendants joined, for partial summary judgment on the issue of vicarious liability is, therefore, appropriately denied.

### 2. *Joint Motion for Partial Summary Judgment Regarding St. Paul's Negligence Claim to the Extent it is Premised on the Doctrine of Res Ipsa Loquitur.*

■ Construction Management and the Fullerton defendants seek summary dismissal of St. Paul's negligence claim to the extent it is premised on the doctrine of *res ipsa loquitur* on the ground that the doctrine does not apply to this case. They first argue application of the doctrine is inappropriate because they did not have the requisite exclusive control of the Erickson home when it was destroyed by fire. Second, they argue the doctrine generally does not apply in fire cases if the fire is of unknown origin because fires may occur in the absence of negligence, and a prima facie showing of negligence is a prerequisite to application of the doctrine.

In *Tompkins v. Northwestern Union Trust Co. of Helena*, 198 Mont. 170, 645 P.2d 402 (1982), the Montana Supreme Court quoted the Restatement (Second) of Torts, § 328D, as properly stating the doctrine of *res ipsa loquitur* as follows:

1. It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

   (a) the event is of a kind which ordinarily does not occur in the absence of negligence;

   (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(9th Cir.1985).

· (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

2. It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

3. It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

645 P.2d at 406. An often important inquiry in applying the doctrine is whether the defendant had exclusive control over the instrumentality at issue · in the case. *Id., citing,* Restatement (Second) of Torts, § 328D, cmt. g (1977).

It is the court's opinion that the fire involved here is the kind of event that ordinarily does not occur in the absence of negligence. While it is true that the Montana Supreme Court has noted that a fire of unknown origin may occur without anyone's negligence, *see Valley Properties Ltd. Partnership v. Steadman's Hardware, Inc.,* 251 Mont. 242, 824 P.2d 250, 254 (1992) (fire in a warehouse), such is not the case here. St. Paul's retained expert has testified by deposition that electrical wiring was the potential cause of the fire. The record does not indicate that any party has offered any evidence to the contrary. It is indisputable that electrical wiring does not ordinarily ignite fires absent negligence.

The second requirement for permitting an inference to be drawn—*i.e.* whether other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence—is, however, less clear based on the record before the court. Construction Management and the Fullerton defendants have pointed to evidence of five other independent contractors hired by the Ericksons who all did work involving wiring that was located, at least in part, in the garage.

They have also noted that other persons, including the Ericksons, had access to the garage at all relevant times. St. Paul has argued, however, that its retained expert has testified that the electrical wiring at issue was located above the ceiling in the garage in a specific location to which only the defendants had access.

■ While "exclusive control" of the instrumentality involved is not essential to the application of the *res ipsa* doctrine, *Tompkins,* 645 P.2d at 406, it can be a significant issue in determining application of the doctrine. *Contreras · v. Vannoy Heating & Air Conditioning, Inc.,* 270 Mont. 393, 892 P.2d 557, 563 (1995). It appears from the conflicting evidence of the parties as the record is developed at this juncture that there is a genuine issue of material fact regarding whether defendants had exclusive control of the instrumentality at issue that precludes the court from either summarily dismissing St. Paul's *res ipsa* claim, or ruling as a matter of law that the doctrine applies in this case. Thus, the joint motion of Construction Management and the Fullerton defendants for partial summary judgment regarding St. Paul's negligence claim to the extent it is premised on the doctrine of *res ipsa loquitur* is appropriately denied.[6]

### 3. The Fullerton Defendants' Motion for Partial Summary Judgment to the Extent St. Paul Has Alleged Negligence Based on Negligent Design.

■ The Fullerton defendants seek summary dismissal of St. Paul's negligence claim to the extent St. Paul alleges negligent design. They base their motion on their contention that St. Paul has failed to identify an expert witness or disclose opinions of an architectural expert. St. Paul counters that it is not alleging negligence in design services rendered by the Fullerton defendants. Rather, it argues, its neg-

---

**6.** Defendants may, of course, renew their motion at an appropriate time during the trial of this matter.

ligence claim flows from its contention that the Fullerton defendants played a broader role in construction of the home, including the design, creation and construction of the home contained in the design/build concept the defendants employed in producing the home.

In this court's opinion, genuine issues of material fact exist regarding the involvement of the Fullerton defendants in the home construction project as a whole that preclude the summary dismissal of St. Paul's negligence claim. For this reason, and for the reasons already discussed herein, the Fullerton defendants' motion for partial summary judgment is denied.

### CONCLUSION

For the above reasons,

1. Construction Management's motion, with which Nick Fullerton and Nick Fullerton Architects, P.C., have joined, for partial summary judgment on the issue of whether Construction Management or the Fullerton defendants may be held vicariously liable for the negligence of Kellogg is DENIED.

2. The joint motion of Construction Management and the Fullerton defendants for partial summary judgment regarding St. Paul's negligence claim to the extent it is premised on the doctrine of *res ipsa loquitur* is DENIED.

3. The Fullerton defendants's motion for partial summary judgment regarding St. Paul's negligence claim to the extent St. Paul alleges negligent design is DENIED.

IT IS SO ORDERED.