AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Plaintiff-Appellant-Cross-Respondent,

v.

The PLEASANT COMPANY, Defendant-Respondent-
Cross-Appellant,†

The RENSCHLER COMPANY, INC., Defendant-Third-
Party Plaintiff-Respondent-Cross-Appellant,†

v.

WESTERN AMERICAN INSURANCE COMPANY, The Ohio
Casualty Insurance Company, Regent Insurance
Company and General Casualty Company of Wis-
consin, Third-Party Defendants-Respondents-
Cross-Respondents.

Court of Appeals

*No. 01–1871. Submitted on briefs June 12, 2002.—Decided
August 29, 2002.*

2002 WI App 229

(Also reported in 652 N.W.2d 123.)

† Petition to review granted 11-12-02.

,772

On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *Wayne M. Yankala* and *Michael R. Vescio* of *Mingo & Yankala, S.C.*, Milwaukee.

On behalf of the defendant-respondent-cross appellant, the cause was submitted on the briefs of *Daniel W. Hildebrand* and *William E. McCardell* of *Dewitt Ross & Stevens S.C.*, Madison.

On behalf of the defendant-third-party plaintiff-respondent-cross-appellant, the cause was submitted on the briefs of *Robert J. Kay* and *Robert A. Mich, Jr.* of *Kay & Andersen, S.C.*, Madison.

On behalf of the third-party defendants-respondents-cross-respondents General Casualty Company of Wisconsin and Regent Insurance Company, the cause was submitted on the brief of *Robert F. Johnson* and *Lee Anne N. Conta* of *Cook & Franke S.C.*, Milwaukee; and on behalf of the third-party defendants-respondents-cross-respondents Western American Insurance Company and The Ohio Casualty Insurance

Company, the cause was submitted on the brief of *Michael D. Lawrynk* of *Gabert, Williams, Konz & Lawrynk, LLP*, Appleton.

Before Vergeront, P.J., Dykman and Deininger, JJ.

¶ 1. VERGERONT, P.J. The dispositive issue on this appeal and cross-appeal is whether the exclusion for "liability assumed in a contract" in policies issued to The Renschler Company precludes coverage for the claims of breach of contract and negligence asserted against Renschler by The Pleasant Company. We conclude this exclusion does preclude coverage of these claims. Accordingly, we reverse the circuit court's order granting summary judgment in favor of Pleasant and Renschler with respect to American Family Insurance Company's Comprehensive General Liability (CGL) policies issued in the years 1994–97, and we remand with instructions to enter summary judgment in favor of American Family Mutual Insurance Company on these policies. In addition, because of this exclusion, we affirm the order granting summary judgment in favor of American Family with respect to its excess liability policies for these years, and we affirm the order granting summary judgment in favor of Ohio Casualty Insurance, Western American Insurance Company, General Casualty Insurance Company, and Regent Insurance Company. Since all these policies contain the exclusion, we do not address other issues raised on the appeal and cross-appeal.

## BACKGROUND

¶ 2. Pleasant entered into a contract with Renschler for the design and construction of a building. Renschler subcontracted with Clifton Lawson, a soils

engineer, to analyze the soil conditions at the site. Lawson reported that the soil conditions were poor and recommended "surcharging"—preparing the site by placing heavy fill on it to compress the soil. Lawson worked with Renschler's project superintendent in carrying out the surcharging. The building was substantially completed in August 1994. Subsequently, there was significant settlement of the building, which caused serious physical damage to the building.

¶ 3. The contract between Pleasant and Renschler provided for arbitration of disputes. Accordingly, Pleasant filed a demand for arbitration asserting two claims against Renschler: breach of contract and negligence. As grounds for the contract claim, Pleasant alleged that Lawson's negligence caused excessive settlement of the building, which resulted in damage to the building, and, by reason of the excessive settlement, Renschler breached its contract with Pleasant. As grounds for the negligence claim, Pleasant alleged that Renschler had a non-delegable common law duty of care to Pleasant in performing its contract, and Renschler was liable for the negligence of Lawson, its subcontractor.

¶ 4. After Pleasant filed the demand for arbitration, American Family filed this action seeking a declaratory ruling that the CGL and excess liability policies it had issued to Renschler did not provide coverage for Pleasant's claims against Renschler, and it therefore did not have a duty to defend in the arbitration. Renschler joined four additional insurers: Ohio Casualty Insurance Company and West American Insurance Company, which issued CGL and excess liability policies respectively for March 31, 1997 through March 31, 1999, and General Casualty Insurance Company and Regent Insurance Company, which issued CGL and

umbrella liability policies, respectively, thereafter. The parties, the court, and the arbitration panel agreed to stay the arbitration until the cross-motions for summary judgment on the coverage issues were resolved.

¶ 5. With respect to American Family's CGL policies for the years 1994–95, 1995–96, and 1996–97, the court concluded that none of the exclusions on which American Family relied were applicable and that coverage was not precluded under either the economic loss doctrine or the loss-in-progress doctrine (also called the known loss doctrine). However, the court concluded there was no coverage under American Family's excess policies for these years because of the professional services exclusion.[1] With respect to the other four insurers, the court concluded there was no coverage under their policies because of the loss-in-progress doctrine: the court decided it was undisputed that in February 1997—before any of their policies were issued—it was obvious to Renschler that the settlement problem was so serious that remediation was necessary.

## DISCUSSION

¶ 6. In reviewing the grant or denial of summary judgment, we apply the same methodology as the circuit court, and our review is de novo. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). If there are no disputed issues of fact, as in this case, we decide which party is entitled to judgment as a matter of law. *Id.*

---

[1] The court also concluded there was no coverage under American Family's CGL and excess policies for 1993–94 because they had expired before construction began and no occurrence, as defined in the policies, took place during the term of this policy. This ruling is not at issue on the appeal and cross-appeal.

¶ 7. Whether an insurer has a duty to defend is determined by comparing the allegations of the complaint—in this case, the arbitration demand—to the terms of the policy. If, assuming the allegations are proved true, the insurer would be obligated to pay the resulting judgment under the terms of the policy, then the insurer has a duty to defend the insured. *Atlantic Mut. Ins. Co. v. Badger Med. Supply Co.*, 191 Wis. 2d 229, 236, 528 N.W.2d 486 (Ct. App. 1995). The interpretation of an insurance contract is a question of law. *Id.*

¶ 8. On appeal, American Family renews the arguments it made in the circuit court for no coverage and no duty to defend under its CGL policies.[2] We address only the exclusion relating to the assumption of liability in a contract, because it is dispositive.

**2. Exclusions**

> This insurance does not apply to:
>
> . . . .
>
> b. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> (1) Assumed in a contract or agreement that is an "insured contract,"[3] provided that "bodily injury" or "property dam-

---

[2] We granted leave to American Family to appeal the circuit court's decision that its CGL polices provided coverage.

[3] "An insured contract" is defined in the policy and does not include Renschler's contract with Pleasant. We therefore do not address this exception to the exclusion.

777

age" occurs subsequent to the execution of the contract or agreement; or

(2) That the insured would have in the absence of the contract or agreement.

(Footnote added.)

¶ 9. The circuit court concluded that this exclusion applied only to indemnity and "hold harmless" agreements, after deciding that cases from other jurisdictions to this effect were persuasive. American Family contends the circuit court erred in not applying the Wisconsin case on point, *Nelson v. Motor Tech, Inc.*, 158 Wis. 2d 647, 462 N.W.2d 903 (Ct. App 1990).

¶ 10. *Nelson* addressed an exclusion with identical language, including the second exception to the exclusion "for liability an insured would have in the absence of the contract or agreement."[4] *Id.* at 650. There, the insured, an auction company, was sued as a third-party defendant by the owner of an automobile who had placed the automobile with the auction company to auction for a specified reserve price. The auction company sold the automobile for significantly less due to a misreading of the reserve price by an employee, and the owner refused to deliver the automobile to the purchaser. When the purchaser sued the owner for specific performance, the owner impleaded the auction company, asserting claims of breach of contract and negligence. After setting forth the exclusion and the second exception, we stated: "The above provision clearly excludes coverage for incidents involv-

---

[4] In *Nelson*, the court did not discuss the first exception to the exclusion, so the reader does not know if that was the same as the "insured contract" exception in American Family's policy; *id.* at 650. However, that exception, as we have noted above, is not applicable in this case.

ing purely contractual liabilities. The policy covers incidents only if there is liability independent of the contract." *Id.*

¶ 11. We then considered whether there was a common law duty to sell a product for more than the reserve price in the absence of a duty created by a contract, and we concluded there was not. *Id.* at 650–51 In reaching this conclusion, we relied on the line of Wisconsin cases establishing that

> in order to proceed in a tort action when the parties' relationship is defined by a contract, there must be a duty in common law independent from any duty created by the contract. In applying this test, the existence of a contract is ignored when determining whether the alleged misconduct is actionable in tort.

*Id.* at 653 (citation omitted). We decided that any liability the auction company had was entirely grounded in a claim for breach of contract. *Id.* Therefore, we held there was no coverage under the policy, and the insurer had been properly dismissed. *Id.* at 654.

¶ 12. Renschler argues that *Nelson* is distinguishable because "it involved third party liability which is not present in this case." According to Renschler, the auction company's liability was to indemnify the owner for its liability to the purchasers, and therefore it was "in the nature of a 'hold harmless' agreement." This is not an accurate reading of *Nelson*. There is nothing in the case that describes the contract between the auction company and the owner of the automobile as an indemnity or "hold harmless" agreement. Rather, the owner of the automobile was suing the auction company for breach of its contract because the auction company sold the automobile for significantly less than the specified reserve price. *Id.* at 649. This is not an

agreement to indemnify or hold harmless. The fact that the owner sued the auction company as a third-party defendant, after itself being sued by the purchaser, has no bearing on the nature of the contract between the auction company and the owner of the automobile.

¶ 13. In short, we see no meaningful basis on which to distinguish *Nelson* from this case. *Nelson* construes the same exclusion in the context of deciding essentially the same issue: whether this exclusion applies when the insured has entered into a contract to perform services and is sued for breach of contract and for negligence in the manner in which the services were performed.[5]

¶ 14. Renschler and Pleasant argue, however, that *Meyer v. United States Fire Insurance Co.*, 218 Wis. 2d 499, 582 N.W.2d 40 (Ct. App. 1998), which we decided after *Nelson*, modifies *Nelson* and supports the circuit court's construction of the exclusion as applying only to indemnification and "hold harmless" contracts.

¶ 15. In *Meyer*, we considered whether an employer's commercial umbrella policy provided coverage for an employee's injury caused by a co-employee. The policy excluded coverage for bodily injury to an employee arising out of employment with the insured, but also provided: "We will pay on behalf of the 'Insured' those sums in excess of the 'Retained Limit' which the 'Insured' by reason of liability imposed by law,

---

[5] Renschler also attempts to distinguish *Nelson* on the ground that we did not in that case consider whether the auction company's conduct constituted an "occurrence," and, had we done so, we "undoubtedly would have concluded that the misreading of the reserve price was not an 'occurrence.' " We do not understand this argument. A case is not less authoritative in construing one exclusion because another exclusion the case did not construe might also have resulted in no coverage.

or assumed by the 'Insured' under contract prior to the 'Occurrence,' shall become legally obligated to pay as damages for [bodily injury]." *Id.* at 504–05. The issue was whether the insured employer "assumed . . . under contract" liability for the injury of the employee by having a motor vehicle liability policy with another insurer, where the employer's motor vehicle liability insurance contained an endorsement that deleted the exclusion for co-employee liability. (Had that exclusion not been deleted, the employer's liability would have been circumscribed by the worker's compensation statute, making worker's compensation the exclusive remedy against the employer. *Id.* at 502 n.1.)

¶ 16. We concluded in *Meyer* that the employer had not "assumed [liability] under contract" and therefore there was no coverage. *Meyer*, 218 Wis. 2d at 507. In reaching this conclusion, we adopted the construction of a Seventh Circuit case, *Dreis & Krump Manufacturing Co. v. Phoenix Insurance Co.*, 548 F.2d 681, 684 (7th Cir. 1977), which held that "liability assumed [by the insured] under any written contract" means a "specific written agreement between the insured and a third party whereby the insured agrees to 'indemnify' the third party." *Meyer* at 505. We reasoned that this construction "complement[ed] the development of the law [regarding waiver of statutory liability]," because Wisconsin cases outside the worker's compensation context had held that the mere purchase of an insurance policy with coverage in excess of statutory limitations of recovery was not a waiver of those limitations. *Id.* at 506 (citing *Stanhope v. Brown County*, 90 Wis. 2d 823, 852, 280 N.W.2d 711, 723 (1979)). Applying this reasoning to the facts before us, we stated:

> [The employer's] contract of [umbrella] insurance . . . specifically excluded coverage for " '[b]odily injury' to an

employee . . . in the course of employment." Even more to the point, however, [the employer] never contracted with [the injured employee] or any other employee to pay any amount greater than the statutory limits afforded by the Worker's Compensation Act. Applying the reasoning of *Dreis & Krump,* under the plain language of the [umbrella] policy, a third-party contract assuming liability would be required in order for the [umbrella] coverage to be triggered under this provision.

A contract of insurance is not a promise to indemnify a third person. Rather, it is an agreement between the insured and the insurer to cover the acts of the insured against the claims of third parties. Including a fellow employee liability exclusion in one insurance contract cannot be construed to create a contractual obligation by another insurer to assume this same liability.

*Id.* at 506–507. We did not mention *Nelson* in *Meyer.*

¶ 17. The issue we decided in *Meyer*—whether an employer's purchase of an insurance policy that deletes a co-employee exclusion is a contract to assume liability to an employee within the meaning of the coverage provisions of an employer's excess policy—bears little relation to the issue we decided in *Nelson* and to the issue presented in this case. Similarly, much of our reasoning in *Meyer* is wholly inapplicable both to *Nelson* and to this case, grounded as it was in the worker's compensation context. Therefore, the result and much of the reasoning in *Meyer* do not conflict with *Nelson.* However, our construction in *Meyer* of the coverage language "liability . . . assumed by the 'Insured' under contract" to mean a contract "between the insured and a third party whereby the insured agrees to indemnify

the third party" arguably conflicts with our construction of the similarly worded exclusion in *Nelson*.

¶ 18. This court does not have the authority to overrule, modify, or withdraw language from our prior decisions; only the supreme court may do so. *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997). Therefore, to the extent our construction of the coverage language in *Meyer* conflicts with our construction of the similarly worded exclusion in *Nelson*, we conclude we must follow *Nelson*, not *Meyer*. The circuit court, Pleasant, and Renschler may be correct that the cases from other jurisdictions are more persuasive than *Nelson*, but those arguments must be addressed to the supreme court.

¶ 19. Following *Nelson*, we conclude that, because of the exclusion, American Family's CGL policies do not provide coverage for any damages for which Renschler may be obligated to Pleasant, unless, in the absence of their contract, Renschler would be liable to Pleasant for Lawson's negligence. Pleasant contends Renschler would be, because, under *Brooks v. Hayes*, 133 Wis. 2d 228, 236, 395 N.W.2d 167 (1986), a general contractor may be liable in tort for a subcontractor's negligence. However, Pleasant's analysis of *Brooks* overlooks the fact that the contract there was the source of the general contractor's duty as described by the court. In order to fully explain this point, we lay out *Brooks* in some detail.

¶ 20. In *Brooks*, the court began by summarizing the issue and its holding in this way:

> The issue . . . is whether a general contractor who
> hires an independent contractor to perform services
> under the general contractor's agreement with a land-

owner [to build a residence] is liable to the landowners for damage to their property caused by the independent contractor's negligent construction. We hold that a general contractor who has a contractual duty of due care in performing the construction contract may be liable to the owner for damages when an independent contractor ... negligently performs under the construction contract and causes property damage to the owner.

*Id.* at 231 (footnote omitted). This statement of the issue and holding do not distinguish between a breach of contract claim against the general contractor and a tort claim, but, as Pleasant points out, the court discusses both in the course of its decision.

¶ 21. The court first addressed the general contractor's assertion that he was not liable under the contract for the independent contractor's negligent performance because he had delegated performance of the masonry work to the independent contractor. The landowner contended that although the contract was silent regarding the standard of care required, the contract implicitly imposed a duty to perform with due care. The court observed that, for purposes of the appeal, the general contractor did not dispute that construction of the contract, and the court stated its own agreement. *Id.* at 234–35. The court found support for the landowner's position in *Colton v. Foulkes*, 259 Wis. 142, 47 N.W.2d 901 (1951), which stated that "accompanying every contract is a common-law duty to perform with care, skill, reasonable expediency and faithfulness the thing they agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of contract." *Brooks*, 133 Wis. 2d at 235 (citing *Colton*, 259 Wis. at 146). The court then concluded that the delegation of some contractual

obligations to an independent contractor did not relieve the general contractor of liability under its contract for the independent contractor's negligent performance. *Id.* at 235–37.

¶ 22.　The court in *Brooks* next considered the general contractor's assertion that the action was really a tort action, and, under tort law, he was not responsible for the torts of an independent contractor (the "independent contractor tort rule"). *Id.* at 247. The court rejected this argument because there is an exception to the independent contractor tort rule for a non-delegable duty, and the court decided that the contract precluded the general contractor from delegating its duty of care under the contract for purposes of tort liability, as well as for purposes of liability for breach of contract. *Id.* The court's conclusion was that "the duty in this case is a non-delegable contractual duty under the independent contractor tort rule." *Id.* at 248.

¶ 23.　At the end of its decision, the court again summarized its holding:

> We hold that [the general contractor] could hire subcontractors to perform the construction contract but that [the delegation] of the performance part of the contract to an independent contractor did not itself relieve [the general contractor] of liability to the plaintiff-owners for property damage resulting from the breach of contract by the independent contractor's negligence. *Furthermore we conclude that the plaintiff-owners have, in the alternative, a tort claim under the facts of this case.*

*Id.* at 249–50 (emphasis added).

¶ 24.　Pleasant relies on the emphasized sentence in support of its argument that the exception to the exclusion—"the insured [has liability] in the absence of

the contract"—applies in this case. However, the tort claim the court in *Brooks* refers to is expressly based on the general contractor's "contractual duty." *Id.* at 248. There is no mention in the case of a duty the general contractor had that existed independently of the contract and made the general contractor liable for the negligence of a subcontractor.[6]

¶ 25. Because neither Pleasant nor Renschler has provided us with authority for Renschler's liability for Lawson's negligence that would exist in the absence of the contract between Pleasant and Renschler, we con-

---

[6] American Family responds to Pleasant's reliance on *Brooks* by asserting that *Landwehr v. Citizens Trust Co.*, 110 Wis. 2d 716, 329 N.W.2d 411 (1983), decided after *Colton* and before *Brooks*, and numerous cases decided after *Brooks's* significantly limit *Brooks* as authority for Pleasant's position. We agree that aspects of *Brooks's* analysis are difficult to reconcile with *Landwehr*, 110 Wis. 2d at 723 (limiting *Colton* by explaining that while a contract may furnish the occasion for the tort, it does not furnish the underlying duty for the tort; "there must be a duty existing independently of the performance of the contract for a cause of action in tort to exist"). It is also true that *Greenberg v. Stewart Title Guaranty Co.*, 171 Wis. 2d 485, 494–95, 492 N.W.2d 147 (1992), rejects an argument based on *Brooks* and reaffirms *Landwehr's* limitation on *Colton*, thus raising a question on the extent to which *Brooks* remains good law. Finally, this court has on many occasions relied on *Landwehr*, or cases relying on *Landwehr*, in rejecting the proposition that a contracting party has a tort action against the other party for deficient performance of the contract. *See, e.g., Madison Newspapers, Inc. v. Pinkerton's Inc.*, 200 Wis. 2d 468, 474, 545 N.W.2d 843 (Ct. App. 1996); *Atkinson v. Everbrite, Inc.*, 224 Wis. 2d 724, 592 N.W.2d 299 (Ct. App. 1999). However, it is not necessary to resolve the arguable conflict between *Brooks* and other cases in order to resolve the issue in this case concerning the application of the exclusion for assuming liability in a contract.

clude the second exception to the exclusion does not apply, and the exclusion precludes coverage for any damages resulting from Lawson's negligence. Since both claims in the arbitration demand are based wholly on Lawson's negligence, the exclusion precludes coverage for any of the resulting damages.

¶ 26. Our conclusion on this issue makes it unnecessary to decide Renschler's and Pleasant's cross-appeal of the circuit court's ruling that there is no coverage under American Family's excess liability policies due to the exclusion for professional services. These policies also contain the same exclusion for assumption of liability in a contract that American Family's CGL policies do. We therefore conclude there is no coverage under American Family's excess policies because of this exclusion, and we do not address the professional services exclusion. *See Haessly v. Germantown Mut. Ins. Co.*, 213 Wis. 2d 108, 116, 569 N.W.2d 804 (Ct. App. 1997) (we may affirm the circuit court if it reaches the correct result, even though we do so for a different reason).

¶ 27. The same is true regarding Renschler's challenge to the circuit court's ruling that there is no coverage under the policies of Ohio Casualty, West American, General Casualty, and Regent due to the loss-in-progress doctrine. Since each of these policies contains the same exclusion as do the American Family CGL policies for assumption of liability in a contract, we affirm the conclusion of no coverage under these policies without addressing the loss-in-progress doctrine.

¶ 28. In conclusion, American Family is entitled to summary judgment in its favor declaring that there is no coverage under any of its policies issued in 1994 and thereafter because of the exclusion for assumption

of liability in a contract, and it therefore has no duty to defend or to indemnify under these policies. Ohio Casualty, West American, General Casualty, and Regent are also entitled to summary judgment in their favor declaring they have no duty to defend or to indemnify under their policies because of this same exclusion. Therefore, we affirm in part, reverse in part, and remand with directions to enter judgment accordingly.

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded with directions.